STATE EX REL. KAY, Appellant, vs. LA FOLLETTE, Governor, and others, Respondents.

*June 4—June 22, 1936.*

*Charles E. Hammersley,* attorney, and *Lorin L. Kay* of counsel, both of Milwaukee, for the appellant.

For the respondents there was a brief by the *Attorney General, Warren H. Resh* and *Herbert H. Naujoks,* assistant attorneys general, and oral argument by *Mr. Resh* and *Mr. Naujoks.*

FOWLER, J.   Alfred Kay on his plea of guilty was sentenced to the house of correction of Milwaukee county for violation of sec. 221.31, Stats., to serve an indeterminate sentence of from not less than one and not more than three years.   The offense of which he was convicted is within the parole statutes.   He has now served a sufficient part of the sentence to entitle him to parole under the statutes of the state, if his interpretation of those statutes is correct.   He duly filed his petition for parole under those statutes.   The board of control made an order granting parole.   Governor Philip F. La Follette refused to approve the order.   On his refusal to approve the order the board of control refused to discharge the relator, and he is still held in confinement.   The prisoner contends that the governor was without power to withhold approval of the board's order and he is entitled to release from actual confinement.   An alternative writ of *mandamus* was issued requiring the defendants to "deliver to the inspector of the house of correction at Milwaukee county" the order of parole granted by the board of control "in all respects properly executed, countersigned and approved [by the governor] as required by law, directing said inspector to release said petitioner [Alfred Kay] in conformity with the statutes" of the state, or to show cause to the contrary.   The defendants moved to quash the alternative writ "on the ground that no reason in law is stated" in the petition for its issue.   Judgment was entered quashing the writ on the ground stated.

The defendants contend that the judgment of the circuit court must be affirmed because the court has no jurisdiction to issue a writ of *mandamus* running against the governor of the state in any case. This point we do not consider, because if the position of the relator is correct, the release of the prisoner might properly be commanded by a writ that did not contain a command to the governor to approve the board's order of parole. If the approval of the governor is not necessary under the statutes to a valid order of parole, a writ running against the board of control alone would effect the prisoner's discharge.

This leaves for consideration the one question, stated by counsel for the relator in their brief, as follows:

"Whether the approval of the governor, required by sec. 57.06, Stats. 1933, to a parole by the state board of control of a prisoner confined in the state prison or the Milwaukee county house of correction is a discretionary or a ministerial duty on the part of the governor, and if discretionary, whether such discretion has been abused."

The main contention of the relator upon this point is that the indeterminate-sentence statute, sec. 359.05, under which the relator was sentenced, provides that "the force and effect" of such sentence is that of (1) "a sentence of the maximum term, subject to the power of actual release from confinement by the board of control" by parole. The provision quoted, designated (1), refers to parole of prisoners under the parole statutes. If there were no other provision respecting the order for parole, the relator's position would doubtless be correct. But the parole statute, sec. 57.06, provides that "the board of control, with the approval of the governor, may, upon ten days' written notice . . . parole any prisoner" within the parole statutes. The relator's contention is, in effect, that the provision for approval of the governor is ineffectual, because the correlative statute giving the effect of the sentence fixes

the right of the prisoner beyond the power of the legislature to add any other conditions of parole. This contention has been, in effect, inferentially negatived by the ruling of the court in the recent case of *State ex rel. Zabel v. Hannan,* 219 Wis. 257, 262 N. W. 625, that the board cannot make a valid order of parole of prisoners in the state's prison unless the notice to the prosecuting district attorney be given as provided by the same statute that prescribes approval by the governor. The same statute that governs paroles from the state's prison applies to prisoners in the house of correction. If in order to validate an order of parole the district attorney must be notified because the statute so provides, with at least equal reason the governor must approve the order to render it effectual. The point here attempted to be made by the relator was not raised in the *Zabel Case, supra,* and that case should not be considered as foreclosing consideration of the point, but it is of some bearing that neither the board nor the prisoner in that bitterly contested case, both of whom were contending for the validity of the parole involved and interested in establishing the broadest possible power of the board, asserted the broad and absolute power of the board here contended for.

We cannot agree with the argument of counsel in support of its contention that the power of the board to parole is absolute. The statutes as they stand certainly do not so indicate. Whatever of force that might be said in support of the contention would seem to be that a statute respecting the parole of prisoners by the board of control which contained the provision for approval of the governor was enacted in 1907, and the indeterminate-sentence statute declaring the effect of such sentence and providing for "actual release from confinement by the board of control" was enacted in 1925, and operated to supersede or impliedly repeal the existing statutory provision for approval by the governor. But the provision for release from actual confinement by the board of control

contained in the 1925 statute was designated as release "by parole." This implies release "by parole" under the existing parole statutes which provided for approval by the governor. This negatives the idea that the "release from actual confinement" was intended to do away with the existing provision for approval of the release by the governor. We see no escape from the conclusion that the approval of the governor must be procured in order to entitle the relator to release from "actual confinement."

The brief of the appellant contains an extended discussion of the distinction between parole and pardon, and the effect of this distinction in affecting the interpretation of the indeterminate-sentence statute. However well founded the distinction may be, the statute must be administered to carry out the intent of the legislature, which plainly is, as we view it, as above stated.

The brief also contends that to require the signature of the governor to the order of parole empowers him to defeat and circumvent the purpose and object of the release provision of the indeterminate-sentence statute and of the parole laws. Whatever of merit, if any, there be to this contention, should properly be addressed to the legislature. It is no affair of the court if the legislature has failed to provide for such administration of the parole system as will best carry out its purpose as penologists and criminologists conceive it to be.

This disposes of the case, except for the contention that the allegation of the petition that the refusal of the governor to approve the order of discharge was "unreasonable, unlawful, capricious, arbitrary, discriminatory, wrongful and contrary to law," is an allegation of fact which must be met by return to the alternative writ, and precludes quashing of the writ for failure to state facts sufficient to warrant its issue. The allegation of unlawfulness of the refusal is manifestly based upon the view that the governor has no discretion to withhold approval, and is a conclusion of law

which is not admitted by demurrer. Aside from this, the allegation is no more than an attack upon the motives of the governor in refusing to approve the board's action. As said in *Attorney-General ex rel. Taylor v. Brown,* 1 Wis. *513, *522:

"But it would be alike unbecoming and unwarranted on our part to inquire into the motives of the governor in the exercise of a discretion given to him alone, in any case. He is responsible for his acts in such case, not to the courts, but to the people. . . .

"It is no part of our duty to impugn the action of the governor in such a case, but on the contrary, we are bound to hold him justified in whatever conclusion he may have formed."

We have sufficiently indicated that the approval by the governor to orders of parole is a discretionary act, rather than a purely ministerial act of positive and absolute duty. As to the contention that the governor's refusal of approval in the instant case was an abuse of discretion, we cannot so regard it. There are no allegations of fact in the petition to warrant such a conclusion. We cannot impute abuse of discretion, especially in view of the nature of the act involved. The history of the administration of parole statutes in some of the states, as matter of common knowledge, has disclosed many abuses, many mistakes in the granting of paroles, by paroling boards. Our legislature saw fit to put a check upon the absolute power of parole by the board of control by requiring approval of its orders by the governor. We see no illegality in this requirement. Its propriety is no concern of the courts, although we may properly say that we see no impropriety in it.

*By the Court.*—The judgment and order of the circuit court are affirmed.