OTIS L. FELIX

v.

GOVERNMENT OF THE VIRGIN ISLANDS,
John D. Merwin, Governor;
Roy W. Bornn, Government Secretary;
George A. Matthias, Commissioner of Public Safety,
and
Percy De Jongh, Commissioner of Finance

Civil No. 158 — 1958

District Court of the Virgin Islands

Div. of St. Thomas and St. John

November 12, 1958

*See, also, 167 F. Supp. 702*

EDITH L. BORNN, ESQ., JAMES A. BOUGH, ESQ. AND DAVID
E. MAAS, ESQ., Charlotte Amalie, *for the plaintiff*
LEON P. MILLER, ESQ., United States Attorney, Charlotte
Amalie, Virgin Islands, *for the defendants*

MARIS, *Circuit Judge*

■ The plaintiff, Otis L. Felix, claiming that he was wrongfully dismissed from employment in the service of the Government of the Virgin Islands, brings this action against the defendants, the Government of the Virgin Islands, John D. Merwin, Governor, Roy W. Bornn, Government Secretary, George A. Matthias, Commissioner of Public Safety, and Percy DeJongh, Commissioner of Finance, seeking reinstatement in this position as Insular Chief of Police and salary from the date of his dismissal. The defendants have filed a motion to dismiss the petition. In considering the defendants' motion I must take the facts as stated by the plaintiff as true.

The plaintiff on the morning of February 26, 1958, while in the midst of performing his official duties as Insular Chief of Police, was called into the office of George

A. Matthias, Commissioner of Public Safety, and handed a letter dated the preceding day and reading as follows:

"February 25, 1958

"Otis L. Felix
"Insular Chief of Police
"Department of Public Safety
"St. Thomas, Virgin Islands

"Dear Sir:

"You are hereby notified and advised that I George A. Matthias, Acting Commissioner of Public Safety by appointment and designation by the Governor of the Virgin Islands, and as such, head of the Department of Public Safety, have recommended and do hereby recommend to the appointing authority, the Governor of the Virgin Islands, your dismissal as an employee in and of the Department of Public Safety. The undersigned as head of said department considers that the good of the service will be served by your dismissal therefrom.

"The reasons for your dismissal are as follows:

"You have failed to demonstrate and exercise administrative and executive ability in the conduct of your duties in connection with your position as Chief of Police which has resulted in a lack of general efficiency in the Division; hazardous public safety conditions; poor traffic control and a lack of proper administrative procedures and controls.

"The above action is taken under the provisions of Title 3, Section 530, of the Virgin Islands Code. A copy of this statement is being filed with the Government Secretary of the Virgin Islands.

"This the 25th day of February, 1958.

"G. A. Matthias<br>
"Acting Commissioner of Public Safety<br>
"by designation of the Governor on<br>
"February 11, 1958"

About five hours later that day the plaintiff was handed a letter from the then Government Secretary, John D. Merwin, now Governor of the Virgin Islands, to the then Governor, Walter A. Gordon, recommending approval of plaintiff's dismissal. Handwritten on the same letter was

the approval by Governor Gordon of plaintiff's immediate dismissal. The letter reads as follows:

"February 26, 1958

"Honorable Walter A. Gordon
"Governor of the Virgin Islands
"Charlotte Amalie
"St. Thomas, Virgin Islands

"Dear Governor Gordon:

"I transmit herewith three copies of letter of dismissal served upon Insular Chief of Police Otis L. Felix this morning by the Acting Commissioner of Public Safety.

"I recommend approval of this dismissal effective the 26th day of February 1958.

"Respectfully yours,
"John D. Merwin
"Government Secretary

"Attachment:
2–26–58 (Handwritten)

"The Recommendation for the dismissal of Chief of Police Otis L. Felix is hereby approved and he is hereby dismissed immediately from the Department of Public Safety.

"Walter A. Gordon
"Governor"

The plaintiff appealed from his dismissal to the Government Employees Service Commission[1] and was granted

---

[1] The appeal was taken pursuant to section 531 of Title 3, V.I.C., which provides:

"§ 531. Appeals to Commission regarding dismissals or demotions; findings and recommendations; final decisions; review; reinstatement

(a) Any regular employee who is dismissed or demoted may appeal to the Commission within thirty days after such action is taken. Upon such appeal, the department head whose action is being reviewed, the appellant-employee, and the Government Secretary or his authorized representative shall have the right to be heard publicly and to present evidence. At the hearing of such appeals, technical rules of evidence shall not apply.

(b) If the Commission determines that the employee was dismissed for political, racial, religious, or personal reasons, it shall recommend that he be reinstated to his former position. In all cases the findings and recommendations of the Commission shall be submitted to, and considered by, the appointing authority, who shall make the final decision, subject to the approval of the Governor, disposing of the appeal.

(c) If the final decision of the appointing authority, as approved by the Governor, is in favor of the employee, the Governor shall reinstate him and shall approve the payment of any salary or wages lost by him."

a hearing on July 17, 1958. His contention before the Commission was that the procedure employed by the authorities gave him no opportunity to file a written statement regarding his dismissal, a right accorded him under section 530, Title 3, V.I.C. The Commission submitted its report of the hearing and its findings to the Governor, which, in pertinent part were as follows:

"The testimony revealed the following:

"Mr. Otis Felix joined the Police Force in St. Thomas in 1941 as a Substitute Patrolman and was promoted through the years until 1958 — except for six months in the U. S. Armed Forces — to Junior Patrolman, Patrolman Class B, Patrolman Class A, Corporal, Sergeant, Lieutenant and after a competitive examination to Insular Chief of Police on September 1, 1955.

"The last rating report on record for the calendar year ending December 31, 1956, is satisfactory and outstanding in some instances. No rating was sent in for the year 1957.

"In December 1957, Mr. Felix was asked by His Excellency, Governor Gordon, to resign as Insular Chief of Police. In a written reply to the Governor, Mr. Felix refused to comply with this request.

"From early in December 1957, until January 31, 1958, he was on vacation, returning to duty on February 1, 1958.

"On February 26, 1958, at around 9:00 a.m., he was called to the office of the Commissioner of Public Safety, Mr. Matthias, and handed a letter, dated February 25, 1958, informing him of his dismissal from the service and requesting him to turn in the pistol and other equipment belonging to the Department.

"On February 26, 1958, at around 2:00 p.m., he was handed a sealed envelope containing a letter from Government Secretary, John D. Merwin, to his Excellency, Governor Gordon, recommending his dismissal, which was approved by the Governor.

"It was established that Mr. Otis Felix, as Insular Chief of Police, was a classified employee of the Government of the Virgin Islands."

Title 3, section 530 of the Virgin Islands Code reads as follows:

"§ 530. Dismissals; procedure

A department head may recommend the dismissal of any regu-

lar employee in his department when he considers that the good of the service will be served thereby. The department head shall give to the employee a written statement of the reasons for the dismissal and file a copy of such statement with the Government Secretary. *The employee shall have an opportunity to file with the department head a written statement regarding the dismissal, a copy of which shall be filed with the Government Secretary.* The Government Secretary shall recommend to the appointing authority the action he deems desirable, and such dismissal shall become effective if approved by the appointing authority."

Government Secretary Merwin explained that as this employee was asked to resign since December of 1957, he felt that he had sufficient time between December 1957 and February 26, 1958, to make representations to the Governor and, further, as the position was an important and sensitive one, he felt justified in recommending his immediate dismissal.

The Commission after considering the testimony and other information brought out at the hearing and the requirements of Title 3, section 530 of the Code as cited above, concluded as follows:—

"That the dismissal was not in accordance with the procedure specifically outlined in Title 3, section 530, of the Virgin Islands Code, as the appellant was not given the opportunity to file a statement in connection with the charges made against him by the Commissioner of Public Safety.

"This decision is respectfully submitted to Your Excellency for final action as required by existing law."

On July 28, 1958, Ullmont L. James, Director of Personnel, notified David E. Maas, Esquire, one of the plaintiff's attorneys, by letter as follows:

"You are advised that on July 18, 1958, the Government Employees Commission sent its report to Governor Gordon on the hearing and findings in the appeal case of Mr. Otis L. Felix, former Police Chief, against his dismissal from service on February 26, 1958. The Commission concluded that 'the dismissal was not in accordance with the procedure specifically outlined in Title 3,

405

section 530, of the Virgin Islands Code, as the appellant was not given the opportunity to file a statement in connection with the charges made against him by the Commissioner of Public Safety.'

"The Governor has now advised that he is not in agreement with the conclusions reached by the Government Employees Service Commission and that 'the action previously taken by Government Secretary John D. Merwin, recommending the dismissal from government service of Mr. Felix and approved by me is not changed and remains in full force and effect'."

The present action followed. The plaintiff contends that his dismissal being in violation of the mandatory provisions of the Code, was a denial of due process and that he suffered injury thereby by loss of salary from the date of dismissal. He asks this court to declare his dismissal not in accordance with the law, to order the Governor,[2] as the appointing authority, and the Government Secretary, as the administrator of the Personnel Merit System, to reinstate him in his position as Insular Police Chief, to order the Commissioner of Public Safety to certify plaintiff's salary, and to order the Commissioner of Finance to pay the salary which he contends is due to him.

The defendants urge (1) that the court is without jurisdiction to entertain this suit against the Government of the Virgin Islands, (2) that the court is without jurisdiction to entertain the suit against the Governor of the Virgin Islands, (3) that it appears upon the face of the complaint that the Court is without jurisdiction of the subject matter of the suit, and (4) that the amended petition fails to state a claim upon which relief can be granted. These contentions I will consider in order.

1. *May the Government be sued in this action?*

■ Section 2(b) of the Revised Organic Act of the Vir-

[2]The complaint, called a petition, which was filed August 25, 1958, was originally brought against John D. Merwin, who was then Government Secretary, as defendant, and amended on September 29, 1958, following the appointment of John D. Merwin as Governor and Roy W. Bornn as Government Secretary, so as to substitute the present defendants. Rule 25, F.R.C.P.

gin Islands (1954, prec. 1 V.I.C.), 48 U.S.C. § 1541(b), provides that "The government of the Virgin Islands . . . shall have the right to sue [by] such name and in cases arising out of contract, to be sued: Provided, That no tort action shall be brought against the government of the Virgin Islands or against any officer or employee thereof in his official capacity without the consent of the legislature constituted by this Act." Whatever may have been the situation with respect to the former municipalities under the Organic Act of 1936[3] (prec. 1 V.I.C.), I am satisfied that Congress intended that the territorial government set up under the Revised Organic Act (1954, prec. 1 V.I.C.), should be subject to suit in contract without its prior consent. Thus the report of the Committee on Interior and Insular Affairs of the Senate upon the bill states: "Subsection (b) of section 2 provides that the Government of the Virgin Islands may sue, and except for a tort action in connection with which the legislature has not given its consent, be sued."[4] And an almost identical statement is made in the report of the Committee on Interior and Insular Affairs of the House of Representatives.[5] This is certainly a clear indication of Congressional intention that the territorial government should be subject to suit in contract without its consent but in tort only with its consent. The present suit, insofar as it is directed against the Government of the Virgin Islands, is in the nature of a suit in contract for unpaid salary due plaintiff from the date of his alleged wrongful dismissal. I conclude that the court has jurisdiction to entertain the suit as against the Government.

2. *May the Governor be sued in this action?*

 The defendants contend that this court is without

[3]See Harris v. Municipality of St. Thomas & St. John, 3 Cir. 1954 (2 V.I. 251), 212 F.2d 323, 326–327.
[4]Senate Report No. 1271, 83d Cong., 2d Sess., p. 9.
[5]House Report No. 1603, 83d Cong., 2d Sess., p. 14.

power to direct a mandatory order to the Governor because the exercise of his official duties is not subject to control or review by the courts. I agree that this is true with respect to actions of the Governor which involve the exercise by him of the discretionary and political power which is conferred upon him by the Revised Organic Act (1954, prec. 1 V.I.C.), as head of the executive branch of the territorial government. As to such matters his action is final and unreviewable.[6] But the same is not necessarily true as to purely ministerial acts of the Governor not involving the exercise of discretion or judgment or as to acts which are prohibited to him by law. For ours is a government of laws and not men and, as Chief Justice Stephen J. Field said long ago in McCauley v. Brooks, 1860, 16 Cal. 11, 41:

". . . The truth is, no officer, however high, is above the law, and when duties are imposed upon him, in regard to which he has no discretion, and in the execution of which individuals have a direct pecuniary interest, and there is no other plain, speedy and adequate remedy, he can be required to perform those duties by the compulsory process of mandamus."

The same rule was somewhat differently expressed by the Supreme Court of Minnesota in McConaughy v. Secretary of State, 1909, 106 Minn. 392, 415, 119 N. W. 408, 417, as follows:

". . . The Governor may exercise the powers delegated to him, free from judicial control, so long as he observes the laws and acts within the limits of the power conferred. His discretionary acts cannot be controllable, not primarily because they are of a political nature, but because the Constitution and laws have placed the particular matter under his control. But every officer under a constitutional government must act according to law and subject to its restrictions, and every departure therefrom or disregard thereof must subject him to the restraining and controlling power of the people, acting through the agency of the judiciary; for it must be remembered that the people act through the courts,

[6]See the cases collected in the following annotations: 6 L.R.A. (n.s.) 750; 32 L.R.A. (n.s.) 355; L.R.A. 1917F, 774; 105 A.L.R. 1124 at 1126.

as well as through the executive or the Legislature. One department is just as representative as the other, and the judiciary is the department which is charged with the special duty of determining the limitations which the law places upon all official action. The recognition of this principle, unknown except in Great Britain and America, is necessary, to 'the end that the government may be one of laws and not men' — words which Webster said were the greatest contained in any written constitutional document."

And in Cooke v. Iverson, 1909, 108 Minn. 388, 390, 122 N.W. 251, 253, 52 L.R.A. (n.s.) 415, 425-426, the same court added:

". . . courts cannot, by injunction, or mandamus, or other process, control or direct the head of the executive department of the state in the discharge of any executive duty involving the exercise of his discretion; but where duties purely ministerial in character are conferred upon the chief executive, or any member of the executive department, as defined by our Constitution, and he refuses to act, or when he assumes to act in violation of the Constitution and laws of the state, he may be compelled to act, or restrained from acting, as the case may be, by the courts, at the suit of one who is injured thereby in his person or property, for which he has no other adequate remedy."

■■ When it has come to the application of these principles to the governor, however, the courts have not been in agreement. The cases are collected in an exhaustive annotation to Blalock v. Johnston, 1936, 180 S. C. 40, 185 S. E. 51, 105 A.L.R. 1115, 1124. See, also, Myers, Mandamus against a Governor, 1905, 3 Mich. L. Rev. 634; Kumm, Mandamus to the Governor in Minnesota, 1924, 9 Minn. L. Rev. 21; Note 1944, 19 Tulane L. Rev. 147; Sherwood, Mandamus to Review State Administrative Action, 1946, 45 Mich. L. Rev. 123, 126-137; 34 Am. Jur. Mandamus §§ 135, 136, 137; 55 C.J.S. Mandamus, § 122a. In many states the courts have never been called upon to pass on the question. In some states the courts have held that mandamus will not lie to control any action of the governor, regardless of whether it is discretionary or purely min-

isterial.[7] Other cases, and those in my opinion which are the better reasoned, have upheld the power of the courts to compel a governor to perform a purely ministerial duty or to refrain from performing an act in violation of law. It was early so held in California[8] and the rule has been followed in many other states.[9] The rationale of these cases is well stated in Martin v. Ingham, 1888, 38 Kan. 641, 645-661, 17 Pac. 162, 164-172, as follows:

"It is generally supposed that in a republican government all men are subject to the laws, and to the due administration of them, and that no man nor any class of men is exempt. There is no express provision in the constitution, nor in any statute, exempting any member of the executive department, chief or otherwise, from being sued in any of the courts of Kansas, or in any action coming within the jurisdiction of any particular court, civil or criminal, upon contract or upon tort, in quo warranto, habeas corpus, mandamus, or injunction; or from being liable to any process or writ properly issued by any court, as subpoenas, summonses, attachments, and other writs or process; and if any one of such officers is exempt from all kinds of suits in the courts, and from all kinds of process issued by the courts, it must be because of some hidden or occult implication of the constitution or the statutes, or from some inherent and insuperable barriers founded in the structure of the government itself, and not from the express provisions of the constitution or the statutes. So far as the present case is concerned, however, which is injunction,

[7] See the cases collected in 105 A.L.R. 1124 at pages 1128-1132.
[8] Middleton v. Low, 1866, 30 Cal. 596. And see Hollman v. Warren, 1948, 32 Cal. 2d 351, 196 P.2d 562, and Jenkins v. Knight, 1956, 46 Cal. 2d 220, 293 P.2d 6.
[9] State v. Henderson, 1917, 199 Ala. 244, 74 So. 344, L.R.A. 1917F, 770; Winsor v. Hunt, 1926, 29 Ariz. 504, 243 Pac. 407; Greenwood Cemetery Land Co. v. Routt, 1892, 17 Colo. 156, 28 Pac. 1125; Martin v. Ingham, 1888, 38 Kan. 641, 17 Pac. 162; McCreary v. Williams, 1913, 153 Ky. 49, 154 S.W. 417; Dupuy v. Jones, 1943, La. App., 15 So. 2d 528, 529; Warfield v. Vandiver, 1905, 101 Md. 78, 60 Atl. 538; State v. Eberhart, 1911, 116 Minn. 313, 133 N.W. 857; Railroad v. The Governor, 1856, 23 Mo. 353; State v. Smith, 1899, 23 Mont. 44, 57 Pac. 449; State v. Thayer, 1891, 31 Neb. 82, 47 N.W. 704; State v. Blasdell, 1868, 4 Nev. 241; Cotten v. Ellis, 1860, 52 N.C. 545; State v. Governor, 1856, 5 Ohio St. 528; Gantenbein v. West, 1914, 74 Or. 334, 144 Pac. 1171; Blalock v. Johnston, 1936, 180 S.C. 40, 185 S.E. 51, 105 A.L.R. 1115; State v. LaFollette, 1936, 222 Wis. 245, 267 N.W. 907; State v. Brooks, 1906, 14 Wyo. 393, 84 Pac. 488, 6 L.R.A. (n.s.) 750. And see the cases collected in 105 A.L.R. 1124 at page 1133.

and another case which is also before us and which we are also considering, which is mandamus, it is only necessary for us to consider whether the governor, without reference to the other members of the executive department, is subject to the action of mandamus and injunction, or not . . .

". . . It would be proper here to say, that no court ever attempts, by either injunction or mandamus, or by any other action or proceeding, to control legislative, judicial, executive, or political discretion; and never indeed attempts to control any purely legislative, judicial, or executive act of any kind, nor pure discretion of any kind, except when a superior court on appeal reviews a decision of an inferior court; and courts do not generally interfere by injunction or mandamus where another plain and adequate remedy exists. The only acts of public functionaries which the courts ever attempt to control by either injunction or mandamus, are such acts only as are in their nature strictly ministerial; and a ministerial act is one which a public officer or agent is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, and without regard to his own judgment or opinion concerning the propriety or impropriety of the act to be performed . . .

". . . Many years ago, Chief Justice Marshall, in the case of Marbury v. Madison, 1 Cranch, 137, said:

'It is not by the office of the person to whom the writ is directed, but the nature of the thing to be done that the propriety or impropriety of issuing a mandamus is to be determined.'

"And such is the rule in all cases, unless the courts are required to make an exception in favor of the governor. In all other cases it is not the rank or character of the individual officer, but the nature of the thing to be done, which governs. No other officer is above the law; and every other officer, to whatever department he may belong, may be compelled to perform a pure ministerial duty . . .

"Perhaps we should say something further with respect to the claim that the three great branches of the government, the legislative, the judicial, and the executive, are co-equal and co-ordinate, and that one cannot control or direct the others. This may be true to some extent, and yet, as we have already seen, it is not true in many cases. For the purpose of passing laws the legislature is supreme, and *the other departments must obey*. For the purpose of construing the laws, and of determining controversies, the courts

411

are supreme, and *the other departments must obey*. And for the purpose of ultimately enforcing the laws the executive department is supreme, and *the other departments must obey*. But the executive department can enforce the statutory laws only as the legislature has enacted them, and where the courts have construed the laws (statutory or constitutional) in the determination of controversies, the executive department can enforce them only as thus construed, and is bound to see that the laws as thus construed, and the judgments and orders of the courts rendered or made in the determination of controversies, are respected and obeyed. And will not the executive department do it? Will it refuse in any instance? It will thus be seen that while each of the different departments of the government is superior to the others in some respects, yet that each government is superior to the others in other respects; and it is always difficult to compare things which are wholly unlike each other, or to call them equal. Each department in its own sphere is supreme. But each outside of its own sphere is weak and must obey. It will be readily admitted that the courts cannot control any executive act of the governor, or any executive power conferred upon him. But may they not control ministerial power wherever placed? Is not ministerial power always inferior to judicial power, and subject to judicial control? The recipient of ministerial power exercises no judgment, no discretion, but is simply bound to obey the law under a given state of facts; and to construe this law and to ascertain these facts are peculiarly within the province of the courts. If an applicant for relief on the ground of the refusal to exercise or the wrongful exercise of ministerial power by the governor has no remedy in the courts, then he has no remedy at all. The remedy of impeachment, and the remedy of subsequent elections, suggested by some of the courts, may be a remedy to the public in general, but it cannot be a remedy to an individual sufferer for injuries or loss in person or to his property. In the case of Marbury v. Madison, 1 Cranch, 137, Chief Justice Marshall uses the following language: 'The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury. One of the first duties of government is to afford that protection.' And further on in the same case . . . after stating that the courts cannot control executive discretion, the great chief justice uses the following language: 'But when the legislature proceeds to impose on that

412

officer (the secretary of state of the United States) other duties; when he is directed peremptorily to perform certain acts; when the rights of individuals are dependent on the performance of those acts, he is so far the officer of the law; is amenable to the laws for his conduct, and cannot at his discretion sport away the vested rights of others.'

". . . Of course we should always presume that the governor intends to do his duty, but he may be mistaken as to the law, or he may not be sufficiently advised as to the facts upon which the applicant for relief founds his right thereto, and there is no way prescribed by law by which issues can be made up and tried before the governor as issues are made up and tried before the courts. The courts are created for the express purpose of trying controversies, while the other departments and ministerial officers are not.

"It is also claimed that if the courts may control the ministerial acts of the governor, and may also determine which are ministerial acts and which not, then that the courts may determine everything, and obtain complete control over the entire executive department, including the governor. It must be remembered, however, that all controversies must be determined somewhere, and that the courts are the only tribunals created by the constitution and the laws for the special purpose of construing the constitution and the laws, and of determining controversies between parties, and the power to determine whether a given power is a purely ministerial power, or not, and whether an applicant for relief in any particular case has a right to such relief under the law creating such power, or not, comes particularly within the province of the courts. And a determination in such a case is purely judicial, and is one of the things for which courts were created, and they could not refuse their aid in such cases without so far wholly abandoning their duties and abdicating their jurisdiction.

". . . Upon the whole, however, if all the cases cited, except such as necessarily included the question whether the courts may in any case control the ministerial acts of the governor, be excluded, and if only such cases as include the above question be considered, then not only reason, but the weight of authority, we think, will be found in favor of the affirmative of the question. And certainly as to all the executive officers except the governor, the great weight of authority, state and federal, is in favor of

413

the theory that ministerial acts to be performed by an executive officer may be controlled by the judiciary. If we are correct in our conclusions, then we have jurisdiction to hear and determine the present case upon its merits. We have jurisdiction to determine whether the acts of the governor sought to be controlled in the present instance are ministerial acts, or acts of some other kind or character; and we have jurisdiction to determine whether the facts of the present case authorize the relief sought."

The cases which take the contrary position mostly go upon the theory that under the constitutionally dictated separation of the executive, legislative and judicial powers of the state government the governor, as chief of the executive branch of the government, is subject to no control whatever by the judicial branch but is responsible only to the people.[10] This theory, however, seems to me to be at war with the basic concept that ours is a government of laws, not of men, and to deny to the judicial branch its proper function which I conceive to be to maintain the reign of law on the part of governors as well as governed. For the reasons already given I cannot accept it. I am even more convinced of the soundness of the doctrine upholding judicial power in this field when it is applied, as here, to the governor of an unincorporated territory. For in such a territory there is no constitutionally imposed division of the powers of the government into three wholly separate branches. It was on this ground, as well as for the reasons earlier discussed in this opinion, that it was held by the Supreme Court of Puerto Rico in Lutz v. Post, 1908, 14 P.R.R. 830, that mandamus lay to compel the governor of that unincorporated territory, as it then was, to perform a ministerial act. Moreover, I believe that, at least in the case of the Virgin Islands, there is another compelling reason for upholding the power of the court in this regard.

[10]Hawkins v. The Governor, 1839, 1 Ark. 570; People v. Bissell, 1857, 19 Ill. 229; Sutherland v. Governor, 1874, 29 Mich. 320; Bates v. Taylor, 1889, 87 Tenn. 319, 11 S.W. 266; People v. Morton, 1898, 156 N.Y. 136, 50 N.E. 791; Hovey v. State, 1891, 127 Ind. 588, 27 N.E. 175; Rice v. Draper, 1911, 207 Mass. 577, 93 N.E. 821, 32 L.R.A. (n.s.) 355.

It is settled that a federal court may enjoin the governor of a state from taking official action which is in violation of the Constitution or laws of the United States to the injury of an individual.[11] This court, while admittedly a territorial court, does have under section 22 of the Revised Organic Act[12] (1954, prec. 1 V.I.C.) all the powers of a United States district court and is therefore under the authorities just cited empowered to enjoin or mandamus the Governor of the Virgin Islands with respect to an official act which violates the federal Constitution or a federal statute, such as the Revised Organic Act. This being so, it would be in the highest degree illogical and, indeed, capricious to hold that the court is not empowered to take similar action with respect to an act of the governor which violates the local law, which is equally binding upon him.

I am accordingly led by what I believe to be the sounder and better reasoned authority to conclude that this court has power to entertain the present suit against the Governor seeking a mandatory order directing him to rectify the plaintiff's alleged illegal discharge by reinstating him.

3. *Does it appear upon the face of the complaint that the Court lacks jurisdiction of the subject matter?*

4. *Does the complaint fail to state a claim against the defendants upon which relief can be granted?*

█ These two questions raised by the defendants' motion to dismiss are really directed to a single point, namely, whether the complaint states an enforceable cause of action. I shall accordingly address myself to this question.

3 V.I.C. § 530 provides that a regular employee of an executive department of the government whose dismissal has been recommended by his department head "shall have an opportunity to file with the department head a written

[11]Sterling v. Constantin, 1932, 287 U.S. 378, 393; Faubus v. United States, 8 Cir. 1958, 254 F.2d 797, 806–807.
[12]48 U.S.C. § 1612.

415

statement regarding the dismissal, a copy of which shall be filed with the Government Secretary." The section then goes on to provide that the "Government Secretary shall recommend to the appointing authority the action he deems desirable" and the dismissal shall only become effective if then approved by the appointing authority. It is necessarily implicit in these provisions that the Government Secretary shall not make a recommendation to the Governor as appointing authority regarding the dismissal of an employee and the Governor shall not act on the recommendation until the opportunity thus guaranteed by the statute to the employee to make a statement in his own defense has been afforded him. The provision of the statute authorizing the filing of such a statement would be meaningless indeed if this were not so.

■■ The Government Employees Service Commission has found in this case that the plaintiff was not given the opportunity to file a statement in connection with the charges filed against him by the acting Commissioner of Public Safety which 3 V.I.C. § 530 accords him. If the facts alleged in the complaint which I have recited earlier in this opinion are true such a finding is inescapable. If, as alleged, the plaintiff was not given the opportunity which the statute guarantees to him of giving to the acting Commissioner and the Government Secretary a statement in his own defense before the Government Secretary's recommendation for his dismissal was presented to the Governor, it would follow that the Governor acted prematurely in approving the recommendation and in dismissing the plaintiff. In that event the plaintiff's dismissal by the Governor, being in plain violation of his statutory right to be heard by written statement in his own defense, would have to be held to be invalid and consequently ineffective. For it is settled that an attempted discharge of a government employee is invalid if it is in violation of the applic-

416

able procedural law or regulations.[13] This of course is not to say that in the absence of statutory authority the court would be empowered to review a discharge on the merits when all the procedural rights of the discharged employee have been accorded him. As to this see the opinion of this court in Phaire v. Merwin, D.C.V.I. 1958 (3 V.I. 320), 161 F. Supp. 710. If, however, the plaintiff should establish at trial that his dismissal was in violation of his procedural rights under the statute he would be entitled to reinstatement in the position from which he had been illegally removed[14] and to his salary from the date of his alleged illegal dismissal.[15]

From what has been said it is clear that the plaintiff has a just grievance if, on the trial of this case, he can prove the truth of the allegations of his complaint. The question remains whether his claims to reinstatement and back pay are of the sort for which the law will afford him relief. As to this I have no doubt. In the first place, the court may enter a declaratory judgment that the plaintiff's dismissal was invalid and of no legal effect.[16] For under 5 V.I.C. §§ 1421 and 1422 this court is empowered to review, as on certiorari, the proceedings for the dismissal of the plaintiff in order to determine whether the Governor or the Government Secretary, or both, exercised their functions erroneously or exceeded their jurisdiction to the in-

[13]Service v. Dulles, 1957, 354 U.S. 363, 388–389; Kutcher v. Highley, D.C. Cir. 1956, 235 F.2d 505; Coleman v. Brucker, D.C. Cir. 1958, 257 F.2d 661; Gadsden v. United States, Ct. Cl. 1948, 78 F. Supp. 126, 127; Washington v. United States, Ct. Cl. 1957, 147 F. Supp. 284.

[14]Borak v. Biddle, D.C. Cir. 1944, 141 F.2d 278.

[15]Borak v. United States, Ct. Cl. 1948, 78 F. Supp. 123.
 In Beuhring v. United States, 1910, 45 Ct. Cl. 404, 406, it was said:
 "It is elementary that though appointment to a public office confers no right of property in the office (Taylor v. Beckham, 178 U.S. 548, 577, 20 S. Ct. 1009, 44 L. Ed. 1187), still the person while rightfully holding such an office is entitled to the salary attached thereto, and of this he can not be deprived without his consent."

[16]Peters v. Hobby, 1955, 349 U.S. 331, 348–349, 75 S. Ct. 790, 99 L. Ed. 1129.

jury of the plaintiff's substantial rights.[17] Moreover under 5 V.I.C. § 1423 the court upon such a review is empowered to annul the decision of dismissal, award to the plaintiff restitution to his office and, if necessary, by mandatory order issued under 5 V.I.C. § 1361(a) direct the Governor and the Government Secretary to reinstate and restore the plaintiff to the office from which he was illegally dismissed. It is widely held that a mandatory order in the nature of a writ of mandamus is the appropriate remedy in such a case.[18] In Jimenez v. Reily, 1922, 30 P.R.R. 582, the Supreme Court of Puerto Rico directed an alternative writ of mandamus to the Governor of Puerto Rico at the instance of one who had been removed by him from office without a hearing and who sought reinstatement. And 5 V.I.C. § 1361, which expressly empowers this court to "issue a mandatory order to any . . . officer, or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station", makes no exception in the case of the governor. Section 1361 was based on section 2, chapter 53, Title III, of the 1921 Codes of the former municipalities. The municipal codes of 1921 were largely taken from the law of Alaska,[19] and this section was taken verbatim from section 1385 of the Compiled Laws of the Territory of Alaska, 1913, which had likewise been taken without change from the law of Oregon.[20] It is significant that the Supreme Court of Oregon in construing this statute has held that it authorized mandamus against the governor.[21]

Likewise, if necessary, a mandatory order may be is-

[17]State v. Frazier, 1921, 47 N.D. 314, 182 N.W. 545; O'Brien v. Olson, 1941, 42 Cal. App. 2d 449, 109 P.2d 8. See Phaire v. Merwin, D.C.V.I. 1958, 3 V.I. 320, 161 F. Supp. 710, 713.
[18]See the cases collected in the note to State v. Baldwin, 1908, 77 Ohio St. 532, 83 N.E. 907, 19 L.R.A. (n.s.) 49.
[19]Burch v. Burch, 3 Cir. 1952, 195 F.2d 799, 805–806.
[20]1 Hill's Annotated Laws of Oregon, 2d ed. 1892, § 593.
[21]See Putnam v. Norblad, 1930, 134 Or. 433, 293 Pac. 940, and cases cited therein.

sued to the Commissioner of Public Safety directing him to certify and to the Commissioner of Finance directing him to pay the plaintiff the salary due to him from the date of his purported dismissal. And, finally, if necessary, the court may enter judgment against the Government of the Virgin Islands for the amount of unpaid salary due the plaintiff. It is thus clear that this court will be able to grant the plaintiff relief if he proves his claim.

Accordingly, the motion to dismiss the amended complaint will be denied and the defendants will be directed to file their answer within ten days.

