RUBY ROUSS and WALTER E. BROWN, Plaintiffs

v.

GOVERNMENT OF THE VIRGIN ISLANDS,
Acting by and through JOHN E. HARDING, Commissioner of
Public Works and DARWIN D. CREQUE, Commissioner of
Housing and Community Renewal

Case No. Civil 13C/1973

Territorial Court of the Virgin Islands

Div. of St. Croix

January 24, 1977

JOHN B. NICHOLS, ESQ. (NICHOLS & SILVERLIGHT), Christiansted, St. Croix, V.I., *for the plaintiff*

DANIEL ISSACSON, ESQ., Assistant Attorney General, V.I. Department of Law, Charlotte Amalie, St. Thomas, V.I., *for the defendant*

FINCH, *Judge*

## MEMORANDUM OPINION

This matter came on for trial on September 21, 1976. Plaintiff, Ruby Rouss, being a twenty year veteran of the

United States Army, became eligible to purchase and did indeed purchase a plot of land owned by the Government of the Virgin Islands. In the latter part of 1966 prior to purchase, a government surveyor took her to inspect one of the available plots, which was Plot 113, Estate Anna's Hope.

In order to get to Plot 113, she and the surveyor traversed Plot 116 onto and through Plot 115 from thence onto and through Plot 114 and then to Plot 113. Plaintiff testified that she believed the road over Plots 116, 115 and 114 to be the access road to Plot 113. Title to Plot 113 Estate Anna's Hope was conveyed sometime in 1966.

The deed of conveyance recited that "The Grantor also covenants that should the land not be accessible from public roads by reason of topography or other causes, the Grantor shall provide adequate access roads to the land." At no time before Plaintiff's purchase of the land nor during the years prior to construction thereon did the Defendant inform Plaintiff that it had not provided access to the Plot. It was not until 1969 when Plaintiff attempted to secure financing for construction was she advised by the lending institution that there was no access to her property. Indeed, the lending institution required access as a condition of its approval of construction financing.

At the time Plaintiff was advised that she had no legal access to the property, she had completed more than one-third of the construction on the dwelling, contracts had been signed with building materials suppliers and workmen. The Plaintiff had to provide an acceptable access route or risk forfeiture of the entire project and the resulting injury to third parties. Faced with such options, the Plaintiff employed Roe-Win, Incorporated to cut a rough road into the southern face of the hill located on her property. In order to construct the road, Plaintiff and Co-Plaintiff Walter E. Brown entered into a perpetual

easement which allows the road to zig-zag across their joint properties. Despite repeated entreaties to the Government of the Virgin Islands, Mrs. Rouss has borne the full expense of construction, approximately $3,000.

The problem of who should bear the cost of construction of this road is the basis of this suit: if it is the Government, then it must acquire Plots 114 and 115 and 116, or at least an easement through them; if it is the Plaintiffs, then they must bear the cost of construction and additionally grant easements to each other for the proper construction of a road.

All parties agree that a resolution of the question lies in the construction of 21 V.I.C. § 7(2) and the language in the deed. 21 V.I.C. § 7(2) reads in pertinent part, "In all cases where by reason of topography or other causes, the land is inaccessible from public roads, the formal documents of purchase either by contract or by deed, shall also require that the Government provide adequate access road to the land". 21 V.I.C. § 7(2) also places upon the grantee the obligation to "commence construction of a residence within five years after date of the formal document."

The Plaintiff Rouss contends that in keeping with the requirements of the law she constructed on her property and that such construction was on terrain which the topography of her lot permitted. The Defendant contends that it has complied with the statutory mandate to provide access in that the public road runs along the southern boundary of her property. The Government says that what the Plaintiff really wants is not an access road but a driveway to her house.

Plaintiffs caption their complaint as follows: "Action in Nature of Mandamus (5 V.I.C. § 1361" [sic]. Defendant in its answer argues that this Court lacks jurisdiction "because no mandatory order shall be issued against the governmental officials named herein requiring the per-

formance of non-administrative duties or obligations which may have arisen from covenants in the Government's deeds of conveyance to Plaintiffs."

Although Plaintiff has styled her action as one for mandamus, the underlying basis of this suit is the statutory contract between Plaintiff and the Government. While the well-established doctrine of sovereign immunity prevents tortious claims for injuries against governmental agents performing the duties of their offices without consent of the Government to be sued, courts have long recognized the injustice of allowing governments to escape their contractual obligations by application of this doctrine.

■ The Revised Organic Act of the Virgin Islands, 48 U.S.C.A. § 1541(b), § 2(b), enacted by Congress explicitly provides that "The government of the Virgin Islands * * * shall have the right to sue by such name and in cases arising out of contract, to be sued: *Provided*, that no tort action shall be brought against the government of the Virgin Islands or against any officer or employee thereof in his official capacity without the consent of the legislature constituted by this Act." Felix v. Government of the Virgin Islands, 167 F.Supp. 702, 706 (1958). In analyzing this section of the Organic Act, the District Court of the Virgin Islands found that Congress clearly intended for the Government of the Virgin Islands to be amenable to suits arising out of its contracts without its consent. Felix, supra. Insofar as this action is one based upon a contract freely entered into by the Government of the Virgin Islands, this Court has both personal and subject matter jurisdiction.

■ The position of the Defendant overlooks the fact that provisions in the deed are not mere covenants between the individual grantor and grantee, but a statutory obligation imposed by the Legislature of the Virgin Islands upon all contracts for the homesteading of public lands.

Whether the acts in controversy are administrative or non-administrative goes to the merits of the case and a decision on the nature of the acts is not necessary to reach a decision as to proper jurisdiction.

■ In the event the Defendant would interpret 5 V.I.C. § 1361(a) to limit the ability to hear a mandamus action in the District Court, the language of the section is permissible: "the District Court may issue a mandatory order." While earlier opinions of the Office of Attorney General stated that actions for mandamus could only be brought in the District Court, concurrent jurisdiction of the District and Municipal Courts allows consideration unless exclusively limited to the District Court. No limitation upon the ability of the Municipal Court to hear this type of action appears within the applicable sections of the Virgin Islands Code. Furthermore, 5 V.I.C. § 1(a) refers to "suits of a civil nature whether cognizable as cases at law or in equity . . ."

During the ten-year period in which Plaintiff has owned Lot 113, Estate Anna's Hope, a public road has been maintained along the southern boundary of that property. However, at no point along that southern boundary are there entryways from the road to the land. The road merely abuts the land with access to the road precluded by a six-foot embankment whose sides are almost perpendicular to the road. In its pleadings, the Defendant argued that the presence of a public road next to Plaintiff's land was sufficient to satisfy the statute. This Court has ruled that "mere frontage of property on a public road did not satisfy the requirements of this section of the Code."

■ Whether the Government has fulfilled its obligations to the Plaintiffs must be decided by analyzing the language of 21 V.I.C. § 7(2), particularly the phrases "adequate access roads to the land," "by reason of topography or other causes." The Court specifically finds that the

Plaintiff's land is inaccessible from the public roads for the following reasons:

(1) the government as developer constructed no subdivision road leading to the plot;

(2) a six-foot embankment prevents the Plaintiff from reaching the public road abutting her property;

(3) the lot which Plaintiff purchased from Defendant is landlocked by the properties of others on all sides but the southern boundary.

Courts faced with the question whether a property owner's right of access has been substantially impaired or denied have recited the same factors: "convenient access", "reasonable and practicable way of egress or ingress", "reasonable or free and convenient access", State Highway Board, supra; Walkup v. Becker, 161 So.2d 893, 894 (Fla. 1964); Iowa State Highway Commission v. Smith, 82 N.W.2d 755 (Iowa, 1957), 73 A.L.R.2d 680, Annotated at 689. Particularly enlightening is the decision in Iowa State Highway Commission. In that case, the Commission re-zoned the highway fronting the Smiths' commercial and residential properties to limit the number of entrances to the commercial property to two, to prevent u-turns, left turns and crossings at designated points. In so doing, the Smiths' only access to their residence was through the driveways of the truckstop. Despite access through the driveways of the commercial property, the Court held that reasonable access to the dwelling had been virtually destroyed. Said the Court:

Certainly the tenant occupants of the dwelling are deprived of free and convenient access to it. They have no means of ingress or egress except over the driveways between the filling station and the highway. There is not access to any other street. We think a *driveway should be permitted for this dwelling* from Hubbell Avenue or, in the absence thereof, just compensation must be paid for the taking of the right of access thereto. (Emphasis added) Ibid at 761.

The Defendant in the action presently before the Court contends that construction of a driveway is beyond the scope of its authority and duty. Clearly, it makes no difference what the roadway is called as long as its purpose is to provide the property owner access to his land which, otherwise, he is denied.

█ Contrary to the holdings of the afore-mentioned opinion, the Government argues that enabling the Plaintiff to reach the southernmost edge of her property is all it is required to do. A second ruling within the same opinion shows the error of the Defendant's argument. In addition to their other properties, the Smiths owned an unimproved lot which was zoned for residential purposes. The sole means of access was a driveway at the extreme northeast corner of the property which could not be used unless a service road was constructed between the residential site and the driveway the Commission had provided. The Court there ruled:

Unless means of access are allowed this residential site its value is greatly diminished and it would be difficult to find a purchaser for it. We think a driveway should be permitted for this residential site or, in the absence thereof, just compensation should be paid for taking the right of access thereto. Ibid at 761.

Having specifically obligated itself to provide an adequate means of access by statute and contract, the Government of the Virgin Islands can be held to no lesser standard than other governmental bodies. The Government was aware of the open-ended covenant it made. The only limitation upon that covenant was that the land be inaccessible. This limitation has been met; the Government cannot now seek to evade its obligations by placing additional conditions and limitations upon the covenant after its enforcement has been invoked.

██ Where an abutting landowner has been cut off from the public road completely, his remedy is to compel

proper access, King v. Stark County, 66 N.D. 467, 266 N.W. 654, 658 (1936). The Plaintiff, Mrs. Rouss seeks to compel proper access by bringing a suit for mandamus proceedings against the Government of the Virgin Islands. Because the grant of an equitable remedy is an extraordinary exercise of the Court's power, the Court must carefully examine the positions of all parties before it.

■ Sometime in 1966, Mr. Bernard Fabio, the government surveyor, took Mrs. Rouss to view Lot 113 Estate Anna's Hope. Mr. Fabio used a road running from a water tower along the boundary line between Anna's Hope and Constitution Hill to reach the lot. While Mr. Fabio did not say this was the access road to the property, he did not say or do anything to prevent such an inference from arising. Thereafter, Mrs. Rouss purchased the property, always using this road as her access route. During the three years that she used the road, neither the Government nor the landowners whose property the road crossed raised any objections to her use. The Government now argues that Mrs. Rouss has no implied easement because with a search of the property records and proper inquiry she would have discovered she had no road. The doctrine of equitable estoppel prevents the Defendant from making this argument.

■ Equitable estoppel protects the innocent party who has reasonably and justifiably relied upon misrepresentations of existing fact by another party. The definition of equitable estoppel was aptly stated in a case arising in Louisiana:

Equitable estoppel may be defined as the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the injustice by barring a party under special circumstances, from taking a position contrary to his prior acts,

admissions, representations, or silence. American Bank & Trust Co. v. Trinity Universal Ins. Co., 251 La. 445, 205 So.2d 35, 40 (1967) ; accord Moline I.F.C. Finance, Inc. v. Soucinek, 91 Ill.App.2d 257, 234 N.E.2d 57 (1968).

By conduct and omission, the Government led Mrs. Rouss to believe that the "tower road" was indeed a proper road.

An essential factor in holding for the party pleading equitable estoppel is that his reliance be justified, American Bank and Trust Co., 251 La. 445, 205 So.2d 35, 40 (1967). In a government subdivision, developed, owned and operated by the government, a purchaser expects the grantor to be familiar with any limitations inherent in the property. There is no indication within the record that the road was posted as private property. Furthermore, it is the testimony of the Plaintiff that the road was clear and well-established. It was also the testimony of the Plaintiff's witness, Mr. Nelthropp, an employee of the Public Works Department that the "subdivision road . . . was used by the people in the area." Under these circumstances, Mrs. Rouss's belief that this was a regular road cannot be held unreasonable.

The Plaintiff has raised two legal theories which she argues justify relief: (1) right of way by necessity; (2) right of way by implication from existing uses. As quoted by the Plaintiff in her brief:

A way of necessity is an easement founded upon an implied grant . . . it arises where there is a conveyance of a part of a tract of land of such nature and extent that either the part conveyed or the part retained is shut off from access to a road . . . 25 Am.Jur.2d, Easements and Licenses § 34; Ashby v. Justus, 32 S.E.2d 709 (1945).

However, the limitations to this general rule prevent the Plaintiff from recovering under this theory. Those limitations are:

213

A way of necessity cannot be claimed over the land of a third person, and it cannot exist where neither the party claiming the way nor the owner of the land over which it is claimed, nor anyone under whom they or either of them claim, was ever seized of both tracts of land at the same time. * * * It has been held that the fact that all of the land was originally part of the public domain and hence owned by a common grantor cannot confer the right from which a way of necessity rises. Similarly, the doctrine of implied reservation of a right of way by necessity has been held not applicable where the unity of title on which it rests can be found only in the state. 25 Am.Jur.2d, Easements and Licenses § 34; accord Walkup v. Becker, 161 So.2d 893, 894 (Fla. 1964).

Neither party has presented any evidence that common ownership was ever in any party other than the Government of the Virgin Islands. In addition, both parties agree that the "tower road" crosses the property of a Mr. Leguillo. For these reasons, the Plaintiff can find no remedy in the doctrine right of way by necessity.

 The Plaintiff's alternate theory was "right of way by implication from existing uses." This theory applies when:

. . . during the unity of title, an apparent permanent and obvious servitude is imposed on one part of an estate in favor of another part, which servitude is in use at the time of the severance and is necessary for the reasonable enjoyment of the other part, on a severance of the ownership a grant of the right to continue such use arises by implication of law, 25 Am.Jur.2d, Easements and Licenses § 27.

The requisites for finding a "right of way by pre-existing uses" are: (1) unity and subsequent severance of title; (2) apparentness of use; (3) permanency of use; (4) continuousness of use; and (5) necessity of use. Considering these elements in order, when all property was owned by the Government, there was unity of title. This unity was severed by the subsequent sales. The testimony at trial was

that the road was clear and well-established, thus apparentness of use. As to permanency of use, there is nothing in the record to indicate the length of time the road was used by the local people prior to 1966. It is certain that from 1966, the use of the road was continuous by Mrs. Rouss and the other people in the area. As to Mrs. Rouss, there is necessity of use. No testimony was presented as to whether others have continued to use this road, but, it seems clear the Plaintiff continues to use the same road.

■ Specifically with respect to Plaintiff Brown the following need be said. Brown, as of the date of this Opinion has not begun construction on the plot. 21 V.I.C. § 7 requires that the purchaser commence construction within five years "after date of the formal document." What is the effect of Brown's failure to construct on his claim? This Court thinks none. Having found the property to be inaccessible, it would seem senseless to require construction. Expressed otherwise, it is impossible to construct on inaccessible land.

■ The same reasoning applies to Rouss in regard to her claim for damages. That is to say, it is only as a result of the Government's failure to provide an access was she required to cut a road so as to satisfy the requirements of the lending institution. Indeed, the Commissioner of Public Works, Gordon A. Finch testified that it is impractical to construct an access from the presently existing government road to Plaintiff Rouss's house. As a direct result of this breach, Plaintiff suffered damages in the sum of $2,014.29.

### JUDGMENT

It is hereby ORDERED, ADJUDGED AND DECREED that the Government of the Virgin Islands provide access to the property of the Plaintiffs, Ruby Rouss and Walter E. Brown, and it is further

ORDERED, ADJUDGED AND DECREED that Plaintiff Ruby Rouss have judgment against the Defendant in the sum of $2,014.29 together with Costs and Attorneys Fees.