TYLER, Appellant, v. STATE DEPARTMENT OF PUBLIC WELFARE, Respondent.

*January 8—February 13, 1963.*

For the appellant there was a brief by *Anderson, Bylsma & Eisenberg* of Madison, and oral argument by *Donald S. Eisenberg*.

For the respondent the cause was argued by *William A. Platz*, assistant attorney general, with whom on the brief was *John W. Reynolds*, attorney general.

FAIRCHILD, J.   1. *Timeliness of proceedings for review.* The attorney general points out that there has been no formal refusal to parole petitioner, within thirty days before service of his petition for review or at any other time. In view of our conclusion that refusal to parole is not reviewable

under secs. 227.15 to 227.21, Stats., inclusive, it is unnecessary to determine whether the present proceedings would be timely.

2. *Do secs. 227.15 to 227.21, Stats., inclusive, authorize proceedings to review a refusal to parole?* Sec. 227.15, Stats., provides in pertinent part:

"Administrative decisions, which directly affect the legal rights, duties, or privileges of any person, whether affirmative or negative in form, . . . shall be subject to judicial review as provided in this chapter."

Decisions of the Department of Public Welfare are not excepted.[1]

Thus the basic question is whether a prisoner's interest in being paroled is a legal right or privilege within the meaning of sec. 227.15, Stats. If not such legal right or privilege, an administrative decision not to parole is not reviewable under sec. 227.15 ff.

*Statutory and administrative provisions for parole.* Sec. 57.06 (1) (a), Stats., provides:

"The department [of public welfare] may parole an inmate of the Wisconsin state prison . . . when he has served twenty years of a life term, less the deduction earned for good conduct as provided in sec. 53.11. . . ."

The statutes contain no provisions fixing standards upon fulfilment of which an inmate is entitled to be paroled, although there are two conditions, in addition to service of a specified portion of the sentence, which must be met before the department is authorized to parole.[2]

---

[1] Sec. 227.22, Stats.

[2] ". . . The district attorney and judge who tried the inmate shall be notified in writing at least ten days before the first application for parole is acted upon and if they so request shall be given like notice of each subsequent application." (Sec. 57.06 (1) (a), Stats.; see *State ex rel. Zabel v. Hannan* (1935), 219 Wis. 257,

There are no statutory provisions governing the application for parole nor requiring a hearing thereon. The statutes do not provide for a parole board. The powers of the department are vested in the director, to be exercised under rules which he establishes with the approval of the State Board of Public Welfare.[3]

The parole board is governed by an administrative order of the director. The parole board consists of the director of the division of corrections and three full-time civil-service members. The board is required to conduct hearings on applications for parole, and to follow a manual entitled, "Parole Board Procedures and Practices." The order states that the director of the department is the final authority and that the board is to make recommendation to him in an advisory capacity. We take judicial notice of both order and manual.

Although the administrative order and the manual refer to a hearing of an application, it is clear that this does not have the attributes of a hearing required for judicial or quasi-judicial determinations of rights. An applicant is to appear personally. Attorneys and others who desire to support the application are not permitted to appear at the hearing, although they may write to or see the board at its offices in Madison. It is clear that much of the information before the board is not available to the applicant.[4]

---

263, 262 N. W. 625, where a parole was set aside by the court, on *certiorari,* for failure to fulfil this condition.) "No such prisoner shall be paroled until the department is satisfied that suitable employment has been secured for him, unless otherwise provided for by the department. . . ." (Sec. 57.06 (2).)

[3] Sec. 46.014, Stats.

[4] We have held that consideration of confidential information by a court upon the matter of sentence, after conviction, does not violate constitutional rights. *State ex rel. Volden v. Haas* (1953), 264 Wis. 127, 130, 58 N. W. (2d) 577; *State v. Carli* (1957), 2 Wis. (2d) 429, 440b, 86 N. W. (2d) 434, 87 N. W. (2d) 830, citing *Williams v. New York* (1949), 337 U. S. 241, 69 Sup. Ct. 1079, 93 L. Ed. 1337.

It is also clear that the standards which the board is to follow require the balancing of many considerations and necessarily involve highly discretionary evaluations of the applicant's character and susceptibilities upon the basis of personal observation as well as information contained in the file. Thus in the introduction to the manual it is said:

"The long-range interest of society as well as the individual demand a parole process which results in release at that moment when the institutionalization has accomplished its constructive purpose and before progress made is lost to the many negatives associated with prolonged confinement.

"This means that at times persons are tried on parole when it is recognized there is some risk of violation of the condition of parole, but only when that risk, in the judgement [sic] of those trained and experienced in the field of corrections does not involve a threat to society and is less than it would be if confinement continued indefinitely.

"In all decisions with respect to parole the best interests of the public set the limits within which the interests of the individual inmate and his family are considered."

A portion of the manual is entitled, "Philosophy of and Specifications for Parole Determination."[5] Relevant portions are:

"3. Basic Aspects of Parole

"Determination of the eligibility for parole of an offender must be made in relation to five fundamental viewpoints:

[5] The validity of the administrative order and the manual is not subject to the provisions of ch. 227, Stats., with respect to the issuance and review of administrative rules. Sec. 227.01 (5), Stats., provides: " 'Rule' as defined in sub. (3) does not include or mean, and the provisions of sub. (4) do not apply to, action or inaction of an agency, regardless of whether otherwise within sub. (3) or (4), which:

"(a) Concerns the internal management of the agency and does not affect private rights or interests;

"(h) Relates to the management, discipline, or release of persons who are committed to state institutions or to the state department of public welfare or who are placed on probation."

"(a) Legal requirements;
(b) Existence of an adequate field staff for necessary supervision;
(c) The response which the individual will make to parole;
(d) The reaction of the community to which the man will be returned upon parole, and
(e) The protection of society from the type of offense for which the individual was placed in institution custody.

"4. Factors Bearing on Readiness of Individual for Parole
"(a) Biographical
"Family and marital history;
Associates;
Habits (including alcoholic and drug addiction);
Work record;
Educational achievement;
Military record;
Religious interests;
Attitude toward self as a person;
Attitude toward return to family, industrial, and social life of the community;
Attitude toward offense;
Understanding of the motivating factors involved in his offense; and
Length and severity of development or criminal record.
"(b) Physical and Mental Health
"Evaluation as a factor in relation to rehabilitation.
"(c) Social
"Ability of individual to meet problems and challenges implicit in a return to community life.
"(d) Record in Institution
"Participation in institutional programs, such as AA, group and individual therapy, trade training, religious, recreation, and leisure-time activities;
Sincerity of interest in assignment; and

Conduct within institution including attitude toward authority.

"5. Factors Bearing on Acceptability of Individual by the Community.

"(a) Character of the offender, nature, and location of the offense;

(b) Length of sentence and time served;

(c) Reputation in the community;

(d) Employment resources;

(e) Community attitude toward the individual as expressed by press, courts, law-enforcement agents, and citizens in general; and

(f) Closeness of family ties and availability of family or other support.

"6. Factors Bearing on Timing of Parole

"(a) Readiness to accept responsibility of parole;

(b) Sufficiency of parole plans, availability of adequate departmental parole field service or other public or private services;

(c) Possible adverse effect upon prison morale; and

(d) Community attitude.

"7. Factors of Safety of Society

"Evaluation of potential danger to society (particularly whether the personal safety of any member of society might be placed in jeopardy)."

It is also clear that parole grants only a limited freedom. Sec. 57.06 (3), Stats., provides in part:

"Every paroled prisoner remains in the legal custody of the department unless otherwise provided by the department; and all prisoners under its custody may be returned to prison at any time, on the order of the department, . . . but any officer may, without order or warrant, take the prisoner into custody whenever it appears necessary in order to prevent escape or enforce discipline or for violation of parole."

*The general rule is that refusal to parole is not subject to judicial review.* The fact that the courts of other states decline to review administrative refusal to parole is not con-

clusive on the question of whether our statutes make such refusal subject to proceedings for review under sec. 227.15 ff., Stats., but their decisions demonstrate that judicial review of such refusal would be unprecedented. We consider them persuasive that "legal rights . . . or privileges" in sec. 227.15 should not be construed to include a prisoner's interest in parole.

A general statement appears in 67 C. J. S., Pardons, p. 604, sec. 20, as follows:

"A parole is a mere matter of grace, favor, or privilege, and a prisoner is not entitled thereto as a matter of right. Subject to the limitations imposed by statute, the question whether a prisoner shall be paroled is a matter for the discretion of the paroling authority, whether it be a court or an officer, board, or commission. Under the statutes and decisions, the discretion of a parole board, commission, or officer as to releasing or refusing to release a prisoner on parole is absolute and not subject to review by a court where the board, commission, or officer acts according to law and without violation of, or departure from, positive statutory requirements."

Statements in accord are found in *Hines v. State Board of Parole* (1944), 293 N. Y. 254, 257, 56 N. E. (2d) 572, 573, 574; *Commonwealth ex rel. Biglow v. Ashe* (1944), 348 Pa. 409, 410, 35 Atl. (2d) 340, 341; *State v. Kalkbrenner* (Minn. 1962), 116 N. W. (2d) 560, 562; *Bozell v. United States* (4th Cir. 1952), 199 Fed. (2d) 449, certiorari denied, 345 U. S. 977, 73 Sup. Ct. 1126, 97 L. Ed. 1391, rehearing denied, 346 U. S. 843, 74 Sup. Ct. 18, 98 L. Ed. 363; *Application of Clover* (1955), 34 N. J. Super. 181, 187, 111 Atl. (2d) 910, 913; *Doyle v. Hampton* (1960), 207 Tenn. 399, 403, 340 S. W. (2d) 891, 893; and *Willard v. Ferguson* (Ky. 1962), 358 S. W. (2d) 516.

*The legislature has not fixed standards upon fulfilment of which a prisoner is entitled to parole.* Had the legislature

spoken in terms of a prisoner's being entitled to parole under certain circumstances, such terms would be persuasive that it intended to confer a right or privilege upon a prisoner who had met the standards, and an administrative determination that he had failed to meet such standards might well be reviewable under sec. 227.15 ff., Stats. It is clear, however, that the legislature has left the matter wholly within the discretion of the director.

Many of the decisions cited from other states stress the breadth of administrative discretion in parole matters as a reason why the courts will not review its exercise.

Our law formerly required approval of parole by the governor as well as the board of control. In a mandamus action where the board had granted parole, but the governor had declined approval, the circuit court quashed the writ. This court affirmed, saying ". . . the approval by the governor to orders of parole is a discretionary act, rather than a purely ministerial act of positive and absolute duty." [6]

*The legislature has not provided for a hearing or other procedural step to safeguard the interests of an applicant for parole.* If the legislature specified procedural requirements even in the exercise of a highly discretionary power, judicial review might be appropriate at least to ensure compliance with the prescribed procedure. Such requirements are absent with respect to parole.

*Inherent difficulty of meaningful judicial review of parole.* A proceeding for review under sec. 227.15 ff., Stats., must be confined to the record, except that testimony may be taken with respect to alleged irregularities in procedure.[7] No record of proceedings is required or made in parole matters. The elements to be considered are highly complex, and

---

[6] *State ex rel. Kay v. La Follette* (1936), 222 Wis. 245, 250, 267 N. W. 907.

[7] Sec. 227.20 (1), Stats.

great weight must undoubtedly be given to the personal observation and evaluation of the applicant by the members of the board. In view of the nature of the matter it would probably be impossible for a court to declare that the refusal to parole was either "unsupported by substantial evidence in view of the entire record as submitted; or . . . arbitrary and capricious" while at the same time giving due weight to "the experience, technical competence, and specialized knowledge of the agency involved, as well as discretionary authority conferred upon it." [8]

The gist of petitioner's claim illustrates the virtual impossibility of a meaningful judicial review of refusal of parole under sec. 227.15 ff., Stats. He alleges that he "has been arbitrarily and capriciously denied equal parole consideration given other 'lifers' who have served less time and whose rehabilitative efforts do not surpass petitioner's own; that numerous 'lifers' have been paroled whose rehabilitative efforts are questionable and whose criminal records far exceed petitioner's own." He claims that he has been denied equal protection under the law. No sound determination could be made concerning those allegations without a detailed knowledge of many cases and the factors which had motivated the parole board and director of the department to exercise their power in the manner they did in each.

The foregoing considerations lead us to the conclusion that a prisoner's interest in parole is not a legal right or privilege and that the department's refusal to parole is not a decision reviewable under sec. 227.15 ff., Stats.

*By the Court.*—Order affirmed.

---

[8] Sec. 227.20 (1) (d) and (e) and (2), Stats.