COLEMAN, Plaintiff-Appellant, v. PERCY, and another, Defendants-Respondents.†

Court of Appeals

*No. 77–615.  Argued September 20, 1978.—Decided October 31, 1978.*
(Also reported in 272 N.W.2d 118.)

† Petition to review granted, on March 13, 1979.

For the appellant there was a brief by *Howard B. Eisenberg,* state public defender; and oral argument by *Elizabeth Alexander,* assistant state public defender.

For the respondents the cause was argued by *Edward S. Marion,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

Before Gartzke, P.J., Bablitch and Dykman, JJ.

GARTZKE, P.J.   This is an appeal from the judgment of the Circuit Court for Dane County which dismissed appellant's complaint. We affirm.

The primary issue is whether a prison inmate who entered a Mutual Agreement Program (MAP) contract with the Department of Health and Social Services may bring an action for a declaratory judgment and money damages for breach of the contract.

Plaintiff was an inmate in the Wisconsin State Reformatory in Green Bay in November, 1976 when he entered the contract.

The MAP manual states,

MAP is designed to help corrections institution residents achieve to the fullest extent possible the exercise of their personal responsibility for progress within and following confinement. . . . MAP involves the resident from the earliest convenient time of incarceration in planning an individualized program which assures delivery of education, vocational training, and/or treatment services, and a behavior component, *in exchange for a guaranteed parole release date.* (Emphasis added.)

MAP operates through a contract between the inmate and the department. The inmate prepares a proposal which may cover training, work assignment, education, treatment and adjustment-conduct-behavior, all in consideration of a specified parole date. The terms are negotiated with the parole board through a coordinator.

The MAP manual consistently refers to the agreement between the parties as a "contract." The current manual refers to

> [a] procedurally-secured system of exchange whereby the resident, institution, Parole Board, and MAP coordinator agree on a certain parole date based upon completion of resident-specified goals. This exchange is sustained in a negotiating process . . . The process results in a document *legally-binding* upon the resident, Division of Correction, Parole Board, and Secretary, Department of Health and Social Services. (Emphasis added.)

Plaintiff's contract provided that in consideration of a September 2, 1977 parole release date, he agreed to accept any work assignment, to receive satisfactory work reports and to receive no conduct reports which would result in a major penalty. He further agreed,

> On or about 2-2-77, I will be classified medium security and transported to Wisconsin Correctional Institution, where I will maintain a medium security rating as approved by Program Review. On or about 6-29-77, I will be classified minimum security and transported to WCCS-Community Correctional Center where I will maintain a minimum security rating as approved by Program Review.

Manual Carballo, "as Secretary" of the department, agreed to provide plaintiff with the necessary program and services to complete his objectives and perform the contract and that plaintiff would be paroled September 2, 1977, "contingent upon his successful completion of the objectives . . ." undertaken by plaintiff.

Plaintiff achieved a medium security rating and was transferred to a Wisconsin Correctional Institution at Fox Lake; but as a result of a disturbance at that institution, he was classified maximum security in June, 1977 and was transferred to the Wisconsin State Reformatory.

His contract was cancelled, pursuant to a provision in the contract providing that his failure to carry out its objectives "will cancel and negate the contract." Plaintiff disputed the cancellation.

The contract provides that cancellation, negation and dispute settlement shall be in accordance with the terms of the MAP manual "and those procedures are incorporated herein and made a part hereof by reference."

The manual provides that the parties may submit in writing to the MAP supervisor a statement of the question, issue, or dispute. The supervisor renders a written decision which may be appealed to the secretary of the department who

[s]hall make a final, written determination of the question, issue or dispute. The written decision of the secretary shall be final and binding on all parties as to the facts, except as it may otherwise be judicially reviewable in the Circuit Court for Dane County as being arbitrary and capricious.

This procedure culminated in a decision by the secretary affirming cancellation of plaintiff's contract. Plaintiff was not paroled on the date specified in the contract.

Plaintiff brings this action against Donald Percy, individually and as secretary of the department,[1] and Ralph C. Collins, individually and as vice chairman of the parole board. The complaint alleges that the defendants prevented plaintiff from fulfilling the contract by transferring him in June, 1977 to maximum security and subsequently cancelling the contract because he did not fulfill the medium security requirement. The complaint seeks declaratory judgment that defendants breached the contract and deprived plaintiff of a hearing, specific performance, damages of $25 for each day beyond September 2, 1977, that plaintiff was in prison. The depart-

[1] Donald Percy is successor to Manual Carballo as secretary of the department.

ment moved to dismiss the complaint on grounds that it fails to state a cause of action.

The complaint was properly dismissed as to the defendants individually. The only parties to the contract are plaintiff and the department. Donald Percy and Ralph C. Collins signed in their representative and not in their personal capacities. Restatement (Second) of *Agency,* sec. 155.

The brief of the Attorney General on behalf of respondents argues that the plaintiff has contractually limited his remedy for breach to certiorari because the words "arbitrary and capricious" are frequently used in stating the standard of review on certiorari. The Attorney General does not question the enforceability of the contract and that issue is not before us. Plaintiff argues that if certiorari was intended, the department should have so stated in the contract, and that nothing in the contract precludes an action for declaratory judgment or damages. The circuit court found that the parties intended certiorari to be the exclusive avenue of review. We agree with the result but not the reasoning of the circuit court.

If this were a contract between two private parties, certiorari could not be the remedy for its breach. First, a contract will not be construed to take away a common law remedy unless that result is imperatively required. *Local 248 UAW v. Natzke,* 36 Wis.2d 237, 251, 153 N.W. 2d 602 (1967). The dispute settlement provision in the MAP manual does not specifically preclude an action for damages or declaratory relief. Second, certiorari is not a remedy for the resolution of contractual disputes between private persons. Certiorari is one of several writs "of a high judicial character, and essential to the complete exercise of the function of sovereignty in the administration of justice." *The Attorney General v. Blos-*

*som,* 1 Wis. 277 (*317), 279 (*320) (1853). These writs "bear no resemblance to the usual processes of courts, by which controversies between private parties are settled by the judicial tribunals of every grade." *The Attorney General v. Blossom, supra,* at 280 (*321). (Emphasis added.) Certiorari is an inadequate remedy for breach of contract. It is a discretionary writ. *State ex rel. Hron Brothers Co. v. Port Washington,* 265 Wis. 507, 509, 62 N.W.2d 1 (1953). The return to a writ of certiorari is merely a certification of the record of the proceedings to be reviewed and does not consist of denials and affirmative defenses. *Consolidated Apparel Co. v. Common Council,* 14 Wis.2d 31, 37, 109 N.W.2d 486 (1961). Damages may not be awarded on certiorari. *Starkweather v. Sawyer,* 63 Wis. 297, 300, 23 N.W. 566 (1885). No court could make whole a damaged party to a contract through certiorari.

Plaintiff's contract with the department cannot, however, be viewed as a contract between two private persons. It is an agreement between an inmate and the department to whom the inmate has been committed.

The MAP contract and remedies for its breach must be considered in the context of discretionary parole. MAP is a non-statutory procedure designed to give the inmate a definite parole date, an arrangement not available through traditional discretionary parole. An inmate is entitled to release as a matter of right if he meets the conditions specified in sec. 53.11(7)(a) for mandatory release, *State ex rel. Hauser v. Carballo,* 82 Wis.2d 51, 55, 261 N.W.2d 133 (1977), but that is not true of discretionary parole pursuant to sec. 57.06(1)(a). A release date under mandatory parole can be computed in advance on the assumption that the inmate will meet the conditions for that parole. It is impossible to predict a release date for discretionary parole because that parole is wholly discretionary, *Tyler v. State De-*

*partment of Public Welfare,* 19 Wis.2d 166, 173, 119 N.W.2d 460 (1962), even though the manner of exercising that discretion is subject to judicial review. *State v. Goulette,* 65 Wis.2d 207, 222 N.W.2d 622 (1974).

The department invented the MAP contract to inject a degree of definiteness into the discretionary parole system. The inmate and the department negotiate terms to be met in return for a specified parole date. The purpose of the contract is to fix the release date, and that is why it is imperative that the agreement be, in the words of the current MAP manual, "legally binding."

The MAP contract is "legally binding" upon the department because certiorari is available for judicial review of a decision by the secretary adversely affecting release on the specified date, such as a decision affirming a disputed "cancellation or negation" of the contract before or after the promised date, or a decision of the secretary affecting other department action which is claimed to amount to anticipatory breach of the promise to release.

Certiorari is available because that is the method of reviewing denials of discretionary parole, *State v. Goulette, supra,* in this case parole promised through contract.

The department may have contemplated that the decision of the secretary shall be reviewable on certiorari.[2] The department's use of the words "arbitrary and ca-

[2] It is fiction to look for plaintiff's intent as to the meaning of the provisions of the MAP manual for judicial review. Plaintiff had no part in drafting those provisions which predate and are not recited in the printed portions of the MAP contract. Respondents do not suggest that those provisions are negotiable. While the contract form tells plaintiff that those provisions "are incorporated and made a part hereof by reference," the form would be more accurate if it stated that the contract is subject to those provisions.

pricious" is consistent with certiorari. The reviewing court on certiorari is limited to determining:

(1) Whether the board kept within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question. *State v. Goulette, supra,* at 215.

The department cannot, however, specify that judicial review of its decisions to grant or deny parole shall be by any particular method. The reviewability of parole matters and the method and scope of review have been determined in Wisconsin by the courts. *Tyler v. State Department of Public Welfare, supra, State v. Goulette, supra.* The department can only state what it believes to be the method of judicial review. Its refusal to honor the promised release date in a MAP contract is a refusal to grant discretionary parole. That refusal is reviewable by certiorari, not because of the intent of the department but because *State v. Goulette, supra,* so held.

There are substantial advantages to the inmate to a review on certiorari of the secretary's decision on a MAP contract as opposed to review on the same writ of the parole board's denial of discretionary parole. Those advantages should encourage use of the MAP contract. The court in reviewing the decision on a MAP contract will, generally, determine whether the secretary's ultimate decision to parole or not to parole, now or in the future, is based on the factors contained in the contract. Those factors are the terms and conditions mutually agreed upon by the inmate and the department. They are specific, prospective and known in advance.

The inmate has no part in determining the factors the parole board will take into account when deciding

whether to grant an application for discretionary parole. They are not necessarily specific in the sense that they apply to the particular inmate seeking release. They are applied retrospectively and may not be known by the inmate in advance.

*State v. Goulette* specified certiorari for review of parole denial in spite of the danger that an inadequate record will be developed for review. The court cannot consider matters outside the record. *State ex rel. Conn v. Board of Trustees,* 44 Wis.2d 479, 171 N.W.2d 418 (1969). *State v. Goulette, supra,* at 216, therefore held that "a hearing with minimal due process or fair play standards should be provided at a parole hearing and that some form of comprehensible and adequate record should be kept and provided for purposes of review." The department has acknowledged in paragraph 1.04 (4) of its *Manual of Practices and Procedures,* Bureau of Probation and Parole, that compliance by the parole board with *State v. Goulette, supra,* requires "development of an adequate record of the parole interview for review by the court upon a petition for a writ of certiorari in cases of parole denial."[3] The MAP contract being part of the parole program, the department must develop an adequate record of the facts regarding disputes related to the contract.

The MAP manual refers to judicial review in the Circuit Court for Dane County. The department has no power to specify the venue. An action to review parole refusal on certiorari is brought in the county in which the relator was convicted of an offense for which he is currently incarcerated. Sec. 801.50 (9m).

*By the Court.*—Judgment affirmed.

---

[3] The *Manual of Practices and Procedures* is judicially noticed. *Tyler v. State Department of Public Welfare,* 19 Wis.2d 166, 173, 119 N.W.2d 460 (1962).