Phillip B. COLEMAN, Plaintiff-Appellant-Petitioner,

v.

Donald PERCY, individually, and as secretary, Department of Health & Social Services, State of Wisconsin, and Ralph C. Collins, individually, and as vice chairman, parole board, Department of Health & Social Services, State of Wisconsin, Defendants-Respondents.

Supreme Court

*No. 77–615. Argued March 31, 1980.—Decided June 3, 1980.*

(Also reported in 292 N.W.2d 615.)

For the appellant-petitioner the cause was argued by *Elizabeth Alexander*, assistant state public defender, with whom on the brief were *Richard L. Cates*, state public defender, and *Howard B. Eisenberg*, former state public defender.

For the respondents the cause was submitted on the brief of *Bronson C. La Follette*, attorney general, and *Edward S. Marion*, assistant attorney general.

HEFFERNAN, J. The issue on this appeal is whether a prison inmate who entered into a Mutual Agreement Program (MAP) "contract" with the Department of Health and Social Services (Department) for discretionary parole may bring an action in the Dane county circuit court for a declaratory judgment and money damages on the claim that the Department breached its contractual obligation to release him on the date specified in the MAP agreement. We affirm the decision and judgment of the courts below dismissing the inmate's complaint for failure to state a claim upon which relief could be granted. The Department's refusal to parole a prisoner on the date set in a MAP agreement, like the

refusal to grant any other type of discretionary parole, is reviewable by a writ of certiorari and does not afford a proper basis for bringing a civil action for breach of contract.

MAP operates through an agreement between the inmate and the Department. The MAP manual consistently refers to the agreement as a "contract."[1] An inmate must meet certain eligibility requirements and conditions to qualify for the program. He may not have a felony detainer or a pending felony court action which may result in an increased sentence; he must be within three years of the mandatory release date; and the contract must have a duration of at least ninety days from the date of negotiation. An inmate who signs a waiver of the right to participate in MAP, or one who has a contract cancelled, or who is unsuccessful in negotiating a contract must wait ninety days before making another application for MAP. And finally, the parole board may refuse to negotiate a contract based on parole criteria.

An inmate who qualifies for the program initiates the process by preparing a proposal which usually covers training, work, education, treatment and behavior goals, all in consideration for a specific parole date. The purpose of the MAP program is explained in the manual as follows:

"MAP is designed to help corrections institution residents achieve to the fullest extent possible the exercise of their personal responsibility for progress within and following confinement.
"MAP provides the vehicle for coordinated and planned involvement in all phases and levels of correctional services. Persons having input into the individual program include: the resident, Assessment & Evaluation (A&E),

---

[1] The current MAP manual states that "[t]he process results in a document *legally-binding* upon the resident, Division of Correction, Parole Board, and Secretary, Department of Health and Social Services." (Emphasis supplied.)

Program Review Committee (PRC), Clinical Services, social worker, probation and parole agent, institution representative (IR), Parole Board, and MAP coordinator (MC).

"MAP involves the resident from the earliest convenient time of incarceration in planning an individualized program which assures/delivery of education, vocational training, and/or treatment services, and a behavior component, in exchange for a guaranteed parole release date."

The petitioner, Phillip Coleman, entered into a MAP agreement with the Department on November 30, 1976, while serving time as a maximum security prisoner at the Wisconsin State Reformatory in Green Bay. Pursuant to the MAP contract, the Department agreed to grant Coleman a discretionary parole on September 2, 1977, if he satisfied the stated conditions, two of which were that he achieve and maintain a medium security classification by February 2, 1977, and a minimum security classification by June 29, 1977.

Coleman achieved a medium security classification by the required date and was transferred to the correctional institution at Fox Lake. However, as a result of a disturbance at the institution on June 13, 1977, Coleman was reclassified maximum security and transferred back to the state reformatory at Green Bay. A MAP panel subsequently cancelled Coleman's MAP contract based on his failure to maintain the medium security classification agreed upon in the contract. The cancellation was made pursuant to a provision in the contract providing that, upon an inmate's failure to satisfy the conditions, "the contract may be declared cancelled."

Coleman sought review of the cancellation before the MAP review committee, the first step in the review procedure specified in the MAP agreement and manual. After that step proved unsuccessful, the State Public Defender contacted the supervisor of the MAP program

on behalf of Coleman and argued that the Department abused its discretion by cancelling Coleman's contract. The public defender argued that Coleman did not participate in the disturbance at Fox Lake and therefore did not violate the terms of his contract. The supervisor upheld the cancellation of Coleman's contract. The supervisor stated that Coleman's role in the Fox Lake disturbance, as described by the MAP review committee, demonstrated that the cancellation was reasonable. Coleman appealed the supervisor's decision to the secretary of the Department, whose designee also upheld the cancellation.

On March 7, 1978, Coleman commenced a civil action in the Dane county circuit court demanding (1) a declaration that the Department[2] had breached the contract; (2) specific performance of the contract, including release from prison; and (3) damages of $25 for every day he was imprisoned after September 2, 1977, the date set in the contract for his discretionary parole. Because Coleman was released on parole during the pendency of the trial court action, the judge ruled that Coleman's request for specific performance was moot, but nevertheless allowed the action to proceed as to the other two demands.

In opposition to the Department's motion to dismiss for failure to state a claim, Coleman argued that he was entitled to seek a declaratory judgment and damages because no remedies were specifically excluded by the con-

---

[2] The action was originally commenced against Donald Percy, individually and as secretary of the Department, and Ralph Collins, individually and as vice chairman of the Parole Board. The trial court properly dismissed the complaint as to the defendants individually since they clearly signed the contract in their representative, rather than personal, capacities. Coleman concedes for purposes of this review that the partial dismissal was proper and that the only parties to the contract were he and the Department.

tract. Coleman reasoned that the Department breached the MAP contract by making it impossible for him to satisfy his contractual obligations when it reclassified him maximum security.

The trial court dismissed Coleman's complaint, holding that the MAP contract indicated that certiorari was intended by the parties to be the exclusive manner of judicial review available to resolve MAP contract disputes.[3] The court reasoned that the concept of "review" was significantly different than an original action for declaratory relief or contract damages in that a reviewing court must defer to the agency's findings unless, in the language of the MAP contract, they are "arbitrary and capricious."

The court of appeals affirmed the trial court's dismissal of Coleman's action, but employed a different rationale to reach that result.[4] Although neither Coleman nor the Department had questioned their authority to specify in the MAP contract the manner and venue for judicial review of contract disputes, the court of appeals ruled that they lacked the authority to do either.

The court of appeals reasoned that the MAP agreement was not an ordinary arms-length contract between private parties and that the remedies available for its alleged breach must be considered in the context of discretionary parole. The court held that the Department's refusal to honor the release date promised in the MAP contract was essentially a refusal to grant discretionary

---

[3] The trial court's decision was based on the following provision in the MAP manual, which was incorporated by reference into the contract with Coleman:

"The written decision of the Secretary shall be final and binding on all parties as to the facts, except as it may otherwise be judicially reviewable in the Circuit Court for Dane County as being arbitrary and capricious."

[4] The court of appeals' decision is published at 86 Wis.2d 336, 272 N.W.2d 118 (Ct. App. 1978).

parole and that such a refusal was reviewable only by certiorari, not because of the parties' intent or because of anything stated in the MAP contract, but because this court ruled in *State v. Goulette,* 65 Wis.2d 207, 222 N.W. 2d 622 (1974), that common law certiorari is the appropriate method for reviewing refusals to grant discretionary parole. The court of appeals stated further that the Department lacks authority to specify by contract the manner in which to review a decision by it to grant or deny discretionary parole.

As a final point, the court of appeals noted that the MAP agreement specified that judicial review should be sought in the Dane county circuit court. The court of appeals held that the Department and Coleman also lacked the authority to specify venue. The court pointed out that pursuant to sec. 801.50(9m), Stats., an action to review parole refusal by certiorari must be brought in the county in which the inmate was last convicted.

In the exercise of our appellate discretion, we granted Coleman's petition for review.

Both parties argue on review that the court of appeals erred in holding that they lacked the authority to prescribe by contract the manner of, and venue for, judicial review of MAP disputes. The parties argue that the entire basis of MAP is contractual and that the freedom to contract for specific negotiated objectives is the keystone to the program's existence.

■

The parties both acknowledge that in *State v. Goulette, supra,* this court held that the refusal to grant discretionary parole is reviewable by common law certiorari[5]

---

[5] Review by statutory certiorari has different characteristics than review by common law certiorari because the former is of right and the latter discretionary. *See, Browndale International, Ltd. v. Board of Adjustment for County of Dane,* 60 Wis.2d 182, 198–99, 208 N.W.2d 121 (1973), *cert. den.* 416 U.S. 936 (1974).

because no other remedy is provided by statute. They also concede that a MAP agreement may properly be viewed, as did the court of appeals, in the context of discretionary parole.[6] They argue, however, that *Goulette* does not stand for the proposition that the Department cannot contract with prison inmates through the MAP process for the same or other remedies. Although agreeing with each other regarding their authority to establish remedies by contract, the parties disagree as

[6] The court of appeals makes this point persuasively in its opinion:

"Plaintiff's contract with the department cannot, however, be viewed as a contract between two private persons. It is an agreement between an inmate and the department to whom the inmate has been committed.

"The MAP contract and remedies for its breach must be considered in the context of discretionary parole. MAP is a nonstatutory procedure designed to give the inmate a definite parole date, an arrangement not available through traditional discretionary parole. An inmate is entitled to release as a matter of right if he meets the conditions specified in sec. 53.11(7)(a) for mandatory release, *State ex rel. Hauser v. Carballo*, 82 Wis.2d 51, 55, 261 N.W.2d 133 (1977), but that is not true of discretionary parole pursuant to sec. 57.06(1)(a). A release date under mandatory parole can be computed in advance on the assumption that the inmate will meet the conditions for that parole. It is impossible to predict a release date for discretionary parole because that parole is wholly discretionary, *Tyler v. State Department of Public Welfare*, 19 Wis.2d 166, 173, 119 N.W.2d 460 (1962), even though the manner of exercising that discretion is subject to judicial review. *State v. Goulette*, 65 Wis.2d 207, 222 N.W.2d 622 (1974).

"The department invented the MAP contract to inject a degree of definiteness into the discretionary parole system. The inmate and the department negotiate terms to be met in return for a specified parole date. The purpose of the contract is to fix the release date, and that is why it is imperative that the agreement be, in the words of the current MAP manual, 'legally binding.'

"The MAP contract is 'legally binding' upon the department because certiorari is available for judicial review . . ." *Coleman v. Percy, supra*, 86 Wis.2d at 341–42.

to what procedures they in fact established in the MAP contract.

After setting forth the various administrative steps available to contest a MAP contract cancellation, all of which were exhausted by Coleman, the agreement provides by way of conclusion that:

"The written decision of the Secretary shall be final and binding on all parties *as to the facts,* except as it may otherwise be judicially reviewable *in the Circuit Court for Dane County as being arbitrary and capricious."* (Emphasis supplied.)

Based on the above provision, the Department reasons that the contract limited Coleman's remedy for breach of contract to common law certiorari because the phrase "arbitrary and capricious" is frequently used to describe the standard of review on certiorari. *See, e.g., State ex rel. Johnson v. Cady,* 50 Wis.2d 540, 550, 185 N.W.2d 306 (1971). Coleman argues that the contract is vague and neither specifies certiorari as the exclusive method of review nor precludes a contract action for declaratory judgment and damages.

We agree with Coleman that the contract fails to specify any particular method of judicial review. Therefore, we hold that it does not conflict with, nor attempt to expand, the procedure of certiorari review specified in *Goulette, supra.* Moreover, even if the contract purported to establish new or additional methods of seeking review, and we were thus obliged to confront the question, we agree with the court of appeals that the parties cannot create a greater right of review by contract than what is provided by statute. Chapter 57, Stats., dealing with parole, contains no mention of the right to seek judicial review.

It is axiomatic that the right of judicial review of administrative decisions is entirely statutory and, accordingly, that orders of an administrative body are not reviewable, except by special writ, unless expressly made so by statute. *West Allis v. WERC,* 72 Wis.2d 268, 270–

71, 240 N.W.2d 416 (1976); *Pasch v. Department of Revenue,* 58 Wis.2d 346, 352, 206 N.W.2d 157 (1973). Moreover, parties cannot, either by failure to contest or by consent confer jurisdiction to review an order which is not otherwise reviewable. *See, e.g., In re Refusal to Submit to Chemical Test: State v. Powell,* 70 Wis.2d 220, 234 N.W.2d 345 (1975); *Heritage Mut. Ins. Co. v. Thoma,* 45 Wis.2d 580, 173 N.W.2d 717 (1970). It follows, therefore, that the Department and Coleman lacked authority to create by contract a greater right of judicial review than what they enjoyed by statute.

It is well established that the refusal to grant parole, as well as the revocation or recission of parole, is not subject to the provisions of ch. 227, Stats., relating to administrative review.[7] *State v. Goulette, supra,* 65 Wis. 2d at 213–14; *State ex rel. Hanson v. H. & S.S. Dept.,* 64 Wis.2d 367, 377, 219 N.W.2d 267 (1974); *State ex rel. R.R. v. Schmidt,* 63 Wis.2d 82, 90, 216 N.W.2d 18 (1974); *Tyler v. State Dept. of Public Welfare,* 19 Wis. 2d 166, 119 N.W.2d 460 (1963). These decisions are founded on the rationale that, because parole is a matter of privilege, the question of whether a prisoner shall be paroled is a matter resting within the discretion of the paroling authority and is not subject to judicial review where the paroling authority acts according to law without violation of express statutory requirements. *See,* 67 C.J.S., *Pardons,* sec. 20 at 604, quoted with approval in *Tyler, supra,* 19 Wis.2d at 173. After noting in *Tyler, supra* at 173, that the legislature "has not fixed standards upon fulfilment of which a prisoner is entitled to parole," we concluded that:

---

[7] The legislature recently repealed the exemption from the definition of administrative "rule" in sec. 227.01 of matters relating to the release of persons committed to state institutions. *See,* sec. 227.01(11)(h), Stats. 1975, repealed by ch. 447, sec. 141, Laws of 1977. Since the effective date of this repeal, July 9, 1978, occurred after the commencement of this action, we do not consider its effect in this case on the long standing rule that ch. 227 review procedures are inapplicable to parole proceedings.

"Had the legislature spoken in terms of a prisoner's being entitled to parole under certain circumstances, such terms would be persuasive that it intended to confer a right or privilege upon a prisoner who had met the standards, and an administrative determination that he had failed to meet such standards might well be reviewable under sec. 227.15 ff., Stats. It is clear, however, that the legislature has left the matter wholly within the discretion of the director.

"Many of the decisions cited from other states stress the breadth of administrative discretion in parole matters as a reason why the courts will not review its exercise." *Id.*

Although there are no statutory provisions for judicial review, we have consistently stated that the Department's refusal to grant parole may be reviewed by common law certiorari. *See, e.g., State v. Goulette, supra,* and cases cited therein. The provision in the MAP manual that the secretary of the Department's decision "shall be final and binding on all parties as to the facts, except as it may otherwise be judicially reviewable . . . as being arbitrary and capricious" is consistent with certiorari review. The scope of review on certiorari is limited to determining:

"(1) Whether the board kept within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question." *State v. Goulette, supra* at 215; *see, also, Snajder v. State,* 74 Wis.2d 303, 310, 246 N.W.2d 665 (1976) ; *Van Ermen v. H. & S.S. Dept.,* 84 Wis.2d 57, 63, 267 N.W.2d 17 (1978).

Given the limited scope of review on certiorari, the court of appeals was correct in stating that the discretionary writ provides an inadequate as well as inappro-

priate procedure for awarding breach of contract damages. *Coleman v. Percy, supra,* 86 Wis.2d at 341. Moreover, any right Coleman might originally have had to seek review by certiorari has been rendered moot by his release on parole. *State ex rel. Clarke v. Carballo,* 83 Wis.2d 349, 356–57, 265 N.W.2d 285 (1978); *State ex rel. Renner v. H. & S.S. Dept.,* 71 Wis.2d 112, 116–17, 237 N.W.2d 699 (1976).

Citing sec. 801.50(9m), Stats.,[8] as authority, the court of appeals held that, because review of the Department's denial of discretionary parole was reviewable by certiorari, the action had to be brought in the county of the relator's last conviction regardless of the venue agreed upon in the MAP contract. Although our resolution of the main issue on appeal obviates the need to address this question, we feel that the court of appeals' decision regarding venue should not stand.

The general venue statute relied upon by the court of appeals is, by its terms, "subject to the provisions for change of venue" which permit a trial court, in the exercise of its discretion, to change venue pursuant to a stipulation by the parties. Sec. 801.54(3), Stats. Based on a predecessor provision, this court recognized the authority of parties to stipulate to venue in a county other than that provided by statute in *State ex rel. Kuhn v. Luchsinger,* 231 Wis. 533, 286 N.W.2d 72

---

[8] Section 801.50 provides in pertinent part that:

". . . subject to the provisions for change of venue the proper place of trial of civil actions is as follows:

". . .

"(9m) CERTIORARI TO REVIEW REVOCATION OF PROBATION OR PAROLE OR REFUSAL OF PAROLE. Of an action to review a probation or parole revocation or a refusal of parole by certiorari, the county in which the relator was last convicted of an offense for which the relator was on probation or parole or for which the relator is currently incarcerated."

(1939). We see no reason why the Department and a prison inmate should be denied the similar right of stipulating to a change of venue pursuant to the MAP process.

*By the Court.*—Decision of the court of appeals and judgment of the circuit court affirmed.