Sue Ann WATTS (BISCHOFF), Plaintiff-Respondent-Cross Appellant,

v.

James E. WATTS, Defendant-Appellant-Cross Respondent. †

Court of Appeals

*Nos. 88-2221, 88-2259. Submitted on briefs July 11, 1989.—Decided September 26, 1989.*

(Also reported in 448 N.W.2d 292.)

† Petition to review denied.

For the plaintiff-respondent-cross appellant the cause was submitted on the briefs of *Foley & Lardner,* with *Robert M. Whitney* and *Julie Genovese* of counsel, of Madison.

For the defendant-appellant-cross respondent the cause was submitted on the briefs of *Daniel G. Sandell* of counsel, of Madison.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J. Sue Ann Watts (Bischoff) and James E. Watts lived together from May, 1969, to December, 1981, and represented themselves as being married to one another, though they were not. They purchased property together, and filed tax returns as husband and wife. Additionally, Bischoff and the two children of their relationship assumed the Watts surname with Watts' consent. Bischoff also helped Watts in his landscaping business, and maintained their cohabitational household.

In March, 1982, some three months after the relationship ended, Bischoff sued Watts seeking a share of the wealth accumulated by Watts during their twelve years of cohabitation. In 1987, the Wisconsin Supreme Court ruled that Bischoff could maintain an action against Watts under the following legal theories: express contract, implied-in-fact contract, unjust enrichment (implied-in-law contract or quasi-contract), and partition. *Watts v. Watts,* 137 Wis. 2d 506, 405 N.W.2d 303 (1987). On remand to the circuit court, the case was tried to a jury, and these appeals follow.

I.

The jury was asked to decide two issues. First, whether Bischoff and Watts had "an implied contract to

share in any increase in wealth during their relationship," and, if so, "[w]hat sum of money will compensate" her. The trial court refused to ask the jury whether the implied contract was breached, concluding that the evidence was clear:

> THE COURT: I just heard the evidence, that's all, and I didn't hear any evidence that disputed that he has not given her half the wealth he accumulated during their time together.
>
> [WATTS' COUNSEL]: He didn't give her any money. She didn't deserve any.
>
> THE COURT: Then if [Bischoff's counsel is] correct, there was a contract and what the terms were, then there was a breach. I can answer that question.

Second, the jury was asked to determine whether Watts was "unjustly enriched" by Bischoff, and, if so, "[w]hat sum of money will compensate" her.

On the first issue, the jury found that there was an implied contract between Watts and Bischoff to share an increase of wealth, but awarded her "zero" damages. On the second issue, the jury found that Watts was unjustly enriched by Bischoff, and awarded her $113,090.08.

Post-verdict motions were made, and, on September 8, 1988, the trial court granted judgment on the verdict with respect to both issues. As to the implied-in-fact contract claim, despite its earlier view that if "there was a contract . . . then there was a breach," and even though there were only two estimates of Watts' increase in wealth in evidence,[1] the trial court upheld the "zero" answer on damages. Its written decision explained:

---

[1]Bischoff's expert estimated the increase to be $1,113,900.88 while Watts' expert put it at $851,306.53.

374

Despite the impressions of the lawyers and the judge at the jury instruction conference, there is evidence in this record that does support a different contract from the one postulated by plaintiff. The jury's verdict is not inconsistent if it found that the contract between the parties was that the defendant would share any increase in wealth with the plaintiff as long as they remained together.

The trial court also upheld the unjust-enrichment award, concluding that there was sufficient evidence from which the jury could determine the value of Bischoff's services to Watts, that Watts had waived a statute of limitations defense by failing to raise it in his original answer to the amended complaint, and that it was appropriate to instruct the jury that it could consider "any benefits conferred on [Bischoff] by [Watts]" in calculating its award.

The parties filed motions for reconsideration and, on November 22, 1988, the trial court reversed itself and granted a new trial on both the implied-in-fact contract issue and on unjust enrichment. As to the implied-contract claim, the trial court's written decision explained:

The unavoidable fact is that by removing the breach question from the verdict, the Court, in essence, directed the verdict on this question. That action was proper only if the jury found the same contract as plaintiff proposed. By answering "zero" to the damage question, this jury was, as [Bischoff] maintains, finding no breach by [Watts]. That is completely contrary to what was discussed at the instruction conference and to the Court's expectation. It is also, in retrospect, unfair to plaintiff. [Citation omitted.]

The trial court also admitted error in connection with Watts' statute of limitations defense. It determined

that the statute of limitations had been properly pled after all and that Watts' motion to amend his pleadings to conform to the proof extended the statute of limitations defense to all of the unjust-enrichment damages Bischoff sought. Thus, the trial court concluded that on retrial the jury would be asked to determine "whether defendant was unjustly enriched during a period unaffected by the Statute of Limitations."

Watts filed a petition for a supervisory writ seeking to have the trial court's November 22, 1988, order rescinded as beyond the trial court's competency. He also filed a petition for leave to appeal from the non-final November 22 order. Bischoff filed a notice of appeal from the November 22, 1988, order conditioned on the grant of either of Watts' petitions. Additionally, Watts appealed, and Bischoff cross-appealed, from the trial court's September 8, 1988, judgment.

This court granted Watts' petition for leave to appeal, but denied his petition for a supervisory writ since the appeal route provided the parties with adequate remedies. *See State ex rel. Oman v. Hunkins,* 120 Wis. 2d 86, 91, 352 N.W.2d 220, 223 (Ct. App. 1984). The appeals and cross-appeals from both the September 8 judgment and the November 22 order were consolidated. Although the parties raise a number of issues, we only discuss those that are dispositive of this appeal. *See Gross v. Hoffman,* 227 Wis. 296, 299–300, 277 N.W. 663, 665 (1938). We reverse and remand for a new trial on the implied-in-fact contract claim, and affirm the verdict on the unjust enrichment claim.[2]

---

[2]We do not discuss what might constitute a prohibited double recovery, since that issue is not before us on this appeal.

## II.

We must first consider the effect of the trial court's November 22, 1988, order. Watts contends it is a nullity because the trial court lost competency to order a new trial after the expiration of ninety days from July 11, 1988, the date of the jury verdict. We agree.[3]

Prior to July 1, 1987, Rule 805.16, Stats. (1985–86), provided, as material here, that "[i]f an order granting or denying a motion . . . for a new trial is not entered within 90 days after the verdict, the motion shall be deemed denied." Under this rule, which is derived from legislation first passed in 1917, *Guptill v. Roemer,* 269 Wis. 12, 16–18, 68 N.W.2d 579, 581–582 (1955), any order granting a new trial must be entered no later than ninety days from the date of the verdict. *Manly v. State Farm Fire & Casualty Co.,* 139 Wis. 2d 249, 252, 407 N.W.2d 306, 307 (Ct. App. 1987). *Cf. Jansen Co. v. Milwaukee Area Dist. Board,* 105 Wis. 2d 1, 10, 312 N.W.2d 813, 817 (1981).

Rule 805.16, Stats. (1985–86) was amended by supreme court order, effective July 1, 1987. 136 Wis. 2d xxv, xxvii. The pertinent provision now reads:

> If an order granting or denying a motion after verdict is not entered within 90 days after the verdict is rendered, the motion shall be deemed denied, and judgment entered on the verdict.

Rule 805.16(3), Stats. (1987–88). Contemporaneously with this change, the supreme court also amended Rule 801.15(2)(c) to provide, as material here, that "[t]he time . . . for deciding motions after verdict under s. 805.16(3)

<hr>

[3]Apparently Bischoff agrees as well. Her brief does not argue the contrary.

. . . may not be enlarged." 136 Wis. 2d at xxvii. There is no indication in the accompanying Judicial Council Notes that the amendments made any substantive change in the mandate recognized by *Manly*. *See* 136 Wis. 2d at xxvii, xxviii.[4] Accordingly, we hold that under Rule 805.16(3), Stats. (1987–88), a trial court loses its competency to decide post-verdict motions after the expiration of ninety days from the date of the jury verdict. Thus, the trial court's November 22, 1988, order must be vacated.

### III.

The appeal and cross-appeal from the September 8, 1988, judgment raise two main issues: whether new trials are required on the implied-in-fact contract claim and the claim for unjust enrichment. We discuss these in turn.

### A.

On her cross-appeal from the judgment, Bischoff seeks alternative remedies in connection with the claim premised on an implied-in-fact contract. These range from an additur of $425,653.27 (which is one-half of the increase of Watts' wealth as estimated by his expert witness) to a new trial on all of the implied-in-fact contract claim issues (i.e., the existence of the contract, breach, and damages).

---

[4]The Judicial Council Note commenting on the amendment to Rule 805.16 that made it clear that the time for hearing post-verdict motions may be enlarged by the court for cause, noted: "However, any such enlargement does not affect the requirement that the motion be decided within 90 days after the verdict is rendered. See [Rule 805.16] sub. (3) and s. 801.15(2)(c), Stats." 136 Wis. 2d at xxviii.

The additur request is premised on Bischoff's view that the verdict question asking whether the parties had an "implied contract to share in any increase in wealth during their relationship" really meant whether the parties had an "implied contract to share in any increase in wealth [*that occurred*] during their relationship [*even though the relationship would some day end* ]." On the other hand, Watts argues that the verdict answers of "yes" there was an implied contract, but that Bischoff's damages were "zero" should stand. He reads the verdict question as really asking whether the parties had an "implied contract to share in any increase in wealth [*that occurred*] during their relationship [*as long as they continued to maintain that relationship*]."[5]

■ The verdict submitted to the jury by the trial court was not sufficiently precise; it permitted the jury to stray from the implied-contract issue as that issue was perceived by both the trial court and counsel. Nevertheless, there is evidence of record that supports the jury's answers *if* the jury read the question in the way Watts suggests.[6] Since the jury answered "zero" to the damage question, it, in effect, found that the contract was not breached. This finding was consistent with the trial court's instruction on damages (a slightly modified version of Wis J I—Civil 3710), which made a finding of breach a prerequisite to an award of damages:

[5]Bischoff asked for a fifty-fifty split, but submitted a proposed verdict question that did not mention a specific division. Watts, on the other hand, submitted a proposed verdict question that asked whether the parties had an implied contract "to share equally in the accumulation of [Watts'] wealth between 1970 and 1981."

[6]Thus, for example, Watts testified that he was willing to support Bischoff for as long as they lived together.

The law provides that a person who has been damaged by a breach of contract shall be fairly and reasonably compensated for his or her loss. In determining the damages, if any, you will allow an amount that will reasonably compensate the injured person for all the losses that are the natural and probable consequences of the breach.

The trial court did not, however, give the jury a verdict question on breach, though both parties requested one. It also did not instruct the jury as to what would constitute breach. Thus, neither party had an opportunity to argue breach. We agree with the essence of the trial court's reflections in its November 22, 1988, decision on reconsideration that, under these circumstances, the implied-in-fact contract claim, as framed and presented to the jury by the trial court, was not fully tried. We conclude that there must be a new trial on this issue. *See* sec. 752.35, Stats.; *Autumn Grove Joint Venture v. Rachlin,* 138 Wis. 2d 273, 282, 405 N.W.2d 759, 763 (Ct. App. 1987).

### B.

Watts raises two issues in connection with Bischoff's claim for unjust enrichment. First, he contends that there was no evidence from which the jury could have awarded $113,090.08. Second, he argues that the statute of limitations bars the action.

### 1.

[4, 5]
A jury verdict will be upheld unless, "considering all credible evidence and reasonable inferences therefrom in the light most favorable" to the verdict, "there is no credible evidence to sustain" it. Rule 805.14(1), Stats.;

*Sumnicht v. Toyota Motor Sales,* 121 Wis. 2d 338, 360, 360 N.W.2d 2, 12 (1984). Moreover, appellate courts must give weight to a trial court's approval of a verdict challenged on insufficiency-of-evidence grounds. *See Upton v. Tatro,* 68 Wis. 2d 562, 570, 229 N.W.2d 691, 695 (1975).

The basis for an unjust enrichment claim in a cohabitation case was framed by the Supreme Court in *Watts:*

> Many courts have held, and we now so hold, that unmarried cohabitants may raise claims based upon unjust enrichment following the termination of their relationships where one of the parties attempts to retain an unreasonable amount of the property acquired through the efforts of both.

*Id.,* 137 Wis. 2d at 532–533, 405 N.W.2d at 314. There was extensive evidence concerning the services that Bischoff performed for Watts, in the upkeep of their home as well as in the service of his business, from which the jury could have determined that Bischoff's efforts fertilized the increased value of Watts' property, not only by helping him in the business but also by freeing him from many nonbusiness tasks. The jury also had ample information from which it could determine the increased value of that property during the time Watts and Bischoff lived and worked together as husband and wife. Financial statements for both Watts and his business for every year from 1970 through 1981 were in evidence, and Bischoff's expert indicated that Watts' net worth had increased by $1,113,900.88, from $382,756.12 in May of 1970 to $1,496,657 in 1981. The jury also knew that in 1972 Watts executed a Will that would have given Bischoff ten per cent of his property, excluding

personal property "directly used in connection with the operation" of his business, and excluding a parcel of real estate used in the business. The jury could have inferred that this was the value Watts placed on Bischoff's services in 1972, and, although the Will excluded much business-related property, it was not unreasonable for the jury to use the ten per cent figure as a guide to determine an appropriate award to Bischoff for unjust enrichment for the 12 year relationship.[7]

Although neither party presented expert testimony on the value of the specific services performed by Bischoff for Watts, such expert testimony was not necessary. *See Redepenning v. Dore,* 56 Wis. 2d 129, 135–136, 201 N.W.2d 580, 584 (1972). *Cf. Kujawski v. Arbor View Health Care Center,* 139 Wis. 2d 455, 463, 407 N.W.2d 249, 252–253 (1987) (expert testimony not required when "determination involves matters within the common knowledge" or "within the realm of the ordinary experience of mankind.").

We agree with the trial court that there was sufficient evidence to support the jury's finding that Watts was unjustly enriched by Bischoff's efforts by $113,090.08, which is a little less than $12,000 a year.

### 2.

Watts' second point in connection with the unjust-enrichment award is that all but the last two years of Bischoff's claim is barred by the statute of limitations applicable to personal-service compensation, sec.

---

[7]Ten per cent of the increase in Watts' net worth given by Bischoff's expert ($1,113,900.88) is $111,390.08. The jury awarded Bischoff $113,090.08.

893.44(1), Stats.[8] He argues that application of sec. 893.44(1), Stats., is required by *Estate of Steffes (Brooks v. Steffes),* 95 Wis. 2d 490, 290 N.W.2d 697 (1980), which accepted, without discussion, the parties' assumption that the two-year statute of limitations applicable for personal-service compensation applied where the plaintiff sought to recover for nursing care she gave the deceased. *Id.* at 492; 290 N.W.2d at 698. Bischoff, on the other hand, argues, alternatively, that Watts is estopped from asserting a statute of limitations defense;[9] that statutes of limitations do not apply to equitable claims for unjust enrichment;[10] and that the six-year statute of limitations for implied contracts, sec. 893.43, Stats.,

---

[8]Section 893.44(1), Stats., as material to this case, provides:

> Any action to recover unpaid salary, wages or other compensation for personal services, except actions to recover fees for professional services . . . shall be commenced within 2 years after the cause of action accrues or be barred.

As we have noted, the trial court originally ruled that Watts had waived the statute of limitations defense by not pleading it in his original answer. The trial court reversed itself in its November 22, 1988, order, which we have vacated because it was entered more than ninety days after the jury's verdict. See part II, above. Bischoff does not now contend that Watts' statute-of-limitations defense has been waived, and we do not address that issue.

[9]*See generally State ex rel. Susedik v. Knutson,* 52 Wis. 2d 593, 191 N.W.2d 23 (1971).

[10]*See Suburban Motors of Grafton, Inc. v. Forester,* 134 Wis. 2d 183, 187, 396 N.W.2d 351, 353 (Ct. App. 1986) ("The timeliness of the commencement of actions at law is governed by statutes of limitations whereas equitable actions are governed by considerations of laches."). *But see Hartford Fire Ins. Co. v. Osborn Plumbing,* 66 Wis. 2d 454, 461, 225 N.W.2d 628, 631 (1975) (applying the six-year statute of limitations currently found in sec. 893.43, Stats., to a claim for contribution, which is "a contract implied by law.").

applies.[11] The basis for our decision, however, is not circumscribed by the parties' legal analyses. *See Coleman v. Percy,* 96 Wis. 2d 578, 583, 292 N.W.2d 615, 618 (1980). Since this case is resolved on a more narrow ground, we need not decide which statute of limitations, if any, applies, or whether Watts is estopped from asserting the defense.

The *Watts*-type claim for unjust enrichment that Bischoff asserts accrues when the relationship has terminated, *see Watts,* 137 Wis. 2d at 532–533, 405 N.W.2d at 314 ("unmarried cohabitants may *raise claims* based upon unjust enrichment *following the termination of their relationships.*" [emphasis added]), and not before, because termination of the relationship without disgorgement of the benefit conferred and improperly retained *is* the injury for which *Watts* permits recovery. *Id.* at 531–533, 405 N.W.2d at 313–314. *See also Osborn Plumbing,* 66 Wis. 2d at 462, 225 N.W.2d at 632 (a "cause of action accrues and the statute of limitations begins to run when an injury occurs."). Thus, Bischoff had no unjust-enrichment " 'claim capable of present enforcement,' " *Meracle v. Children's Serv. Soc'y,* 149 Wis. 2d 19, 26, 437 N.W.2d 532, 534 (1989) (quoting *Barry v. Minahan,* 127 Wis. 570, 573, 107 N.W. 488, 490 [1906]), under *Watts* until the relationship ended in December, 1981. Since this action was commenced in March, 1982, it is within the shortest possible period of applicable limitations, and is timely. The trial court's

[11]Section 894.43, Stats., as material to this case, provides:

An action upon any contract, obligation or liability, express or implied, including an action to recover fees for personal services . . . shall be commenced within 6 years after the cause of action accrues or be barred.

September 8, 1988, judgment on the unjust enrichment verdict is affirmed.

*By the Court.*—Judgment affirmed in part, reversed in part, order vacated, and cause remanded.